# WYOMING *v.* HOUGHTON

No. 98–184.   Argued January 12, 1999—Decided April 5, 1999

296

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, KENNEDY, THOMAS, and BREYER, JJ., joined. BREYER, J., filed a concurring opinion, *post*, p. 307. STEVENS, J., filed a dissenting opinion, in which SOUTER and GINSBURG, JJ., joined, *post*, p. 309.

*Paul S. Rehurek*, Deputy Attorney General of Wyoming, argued the cause for petitioner. With him on the briefs were *Gay Woodhouse*, Acting Attorney General, and *D. Michael Pauling*, Senior Assistant Attorney General.

*Barbara McDowell* argued the cause for the United States as *amicus curiae* urging reversal. With her on the brief were *Solicitor General Waxman*, *Assistant Attorney General Robinson*, and *Deputy Solicitor General Dreeben*.

*Donna D. Domonkos,* by appointment of the Court, 525 U. S. 980, argued the cause for respondent. With her on the brief were *Sylvia Lee Hackl* and *Michael Dinnerstein.**

JUSTICE SCALIA delivered the opinion of the Court.

This case presents the question whether police officers violate the Fourth Amendment when they search a passenger's personal belongings inside an automobile that they have probable cause to believe contains contraband.

I

In the early morning hours of July 23, 1995, a Wyoming Highway Patrol officer stopped an automobile for speeding and driving with a faulty brake light. There were three

---

*Briefs of *amici curiae* urging reversal were filed for the State of Kentucky et al. by *Albert B. Chandler III,* Attorney General of Kentucky, *Matthew Nelson,* Assistant Attorney General, *Dan Schweitzer,* and *John M. Bailey,* Chief State's Attorney of Connecticut, and by the Attorneys General for their respective jurisdictions as follows: *Bill Pryor* of Alabama, *Grant Woods* of Arizona, *Winston Bryant* of Arkansas, *Daniel E. Lungren* of California, *M. Jane Brady* of Delaware, *Thurbert E. Baker* of Georgia, *Gus F. Diaz* of Guam, *Margery S. Bronster* of Hawaii, *Alan G. Lance* of Idaho, *Thomas J. Miller* of Iowa, *Richard P. Ieyoub* of Louisiana, *Andrew Ketterer* of Maine, *J. Joseph Curran, Jr.,* of Maryland, *Frank J. Kelley* of Michigan, *Hubert H. Humphrey III* of Minnesota, *Mike Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Peter Verniero* of New Jersey, *Dennis C. Vacco* of New York, *Michael F. Easley* of North Carolina, *Heidi Heitkamp* of North Dakota, *Betty D. Montgomery* of Ohio, *W. A. Drew Edmondson* of Oklahoma, *Charles M. Condon* of South Carolina, *Mark Barnett* of South Dakota, and *Jan Graham* of Utah; for the Criminal Justice Legal Foundation by *Kent S. Scheidegger* and *Charles L. Hobson;* and for the National Association of Police Organizations by *Stephen R. McSpadden.*

Briefs of *amici curiae* urging affirmance were filed for the Legal Aid Society of New York City et al. by *M. Sue Wycoff;* for the National Association of Criminal Defense Lawyers by *Paul Mogin* and *Lisa B. Kemler;* and for the Rutherford Institute by *Steven H. Aden* and *John W. Whitehead.*

passengers in the front seat of the car: David Young (the driver), his girlfriend, and respondent. While questioning Young, the officer noticed a hypodermic syringe in Young's shirt pocket. He left the occupants under the supervision of two backup officers as he went to get gloves from his patrol car. Upon his return, he instructed Young to step out of the car and place the syringe on the hood. The officer then asked Young why he had a syringe; with refreshing candor, Young replied that he used it to take drugs.

At this point, the backup officers ordered the two female passengers out of the car and asked them for identification. Respondent falsely identified herself as "Sandra James" and stated that she did not have any identification. Meanwhile, in light of Young's admission, the officer searched the passenger compartment of the car for contraband. On the back seat, he found a purse, which respondent claimed as hers. He removed from the purse a wallet containing respondent's driver's license, identifying her properly as Sandra K. Houghton. When the officer asked her why she had lied about her name, she replied: "In case things went bad."

Continuing his search of the purse, the officer found a brown pouch and a black wallet-type container. Respondent denied that the former was hers, and claimed ignorance of how it came to be there; it was found to contain drug paraphernalia and a syringe with 60 ccs of methamphetamine. Respondent admitted ownership of the black container, which was also found to contain drug paraphernalia, and a syringe (which respondent acknowledged was hers) with 10 ccs of methamphetamine—an amount insufficient to support the felony conviction at issue in this case. The officer also found fresh needle-track marks on respondent's arms. He placed her under arrest.

The State of Wyoming charged respondent with felony possession of methamphetamine in a liquid amount greater than three-tenths of a gram. See Wyo. Stat. Ann. § 35-7-1031(c)(iii) (Supp. 1996). After a hearing, the trial court de-

nied her motion to suppress all evidence obtained from the purse as the fruit of a violation of the Fourth and Fourteenth Amendments. The court held that the officer had probable cause to search the car for contraband, and, by extension, any containers therein that could hold such contraband. A jury convicted respondent as charged.

The Wyoming Supreme Court, by divided vote, reversed the conviction and announced the following rule:

> "Generally, once probable cause is established to search a vehicle, an officer is entitled to search all containers therein which may contain the object of the search. However, if the officer knows or should know that a container is the personal effect of a passenger who is not suspected of criminal activity, then the container is outside the scope of the search unless someone had the opportunity to conceal the contraband within the personal effect to avoid detection." 956 P. 2d 363, 372 (1998).

The court held that the search of respondent's purse violated the Fourth and Fourteenth Amendments because the officer "knew or should have known that the purse did not belong to the driver, but to one of the passengers," and because "there was no probable cause to search the passengers' personal effects and no reason to believe that contraband had been placed within the purse." *Ibid.* We granted certiorari, 524 U. S. 983 (1998).

## II

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In determining whether a particular governmental action violates this provision, we inquire first whether the action was regarded as an unlawful search or seizure under the common law when the Amendment was framed. See *Wilson* v. *Arkansas*, 514 U. S. 927, 931 (1995); *California* v. *Hodari D.*, 499 U. S. 621, 624 (1991). Where that inquiry yields no answer, we must

evaluate the search or seizure under traditional standards of reasonableness by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests. See, *e. g., Vernonia School Dist. 47J* v. *Acton,* 515 U. S. 646, 652–653 (1995).

It is uncontested in the present case that the police officers had probable cause to believe there were illegal drugs in the car. *Carroll* v. *United States,* 267 U. S. 132 (1925), similarly involved the warrantless search of a car that law enforcement officials had probable cause to believe contained contraband—in that case, bootleg liquor. The Court concluded that the Framers would have regarded such a search as reasonable in light of legislation enacted by Congress from 1789 through 1799—as well as subsequent legislation from the founding era and beyond—that empowered customs officials to search any ship or vessel without a warrant if they had probable cause to believe that it contained goods subject to a duty. *Id.,* at 150–153. See also *United States* v. *Ross,* 456 U. S. 798, 806 (1982); *Boyd* v. *United States,* 116 U. S. 616, 623–624 (1886). Thus, the Court held that "contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant" where probable cause exists. *Carroll, supra,* at 153.

We have furthermore read the historical evidence to show that the Framers would have regarded as reasonable (if there was probable cause) the warrantless search of containers *within* an automobile. In *Ross, supra,* we upheld as reasonable the warrantless search of a paper bag and leather pouch found in the trunk of the defendant's car by officers who had probable cause to believe that the trunk contained drugs. JUSTICE STEVENS, writing for the Court, observed:

> "It is noteworthy that the early legislation on which the Court relied in *Carroll* concerned the enforcement of laws imposing duties on imported merchandise. . . . Presumably such merchandise was shipped then in con-

tainers of various kinds, just as it is today. Since Congress had authorized warrantless searches of vessels and beasts for imported merchandise, it is inconceivable that it intended a customs officer to obtain a warrant for every package discovered during the search; certainly Congress intended customs officers to open shipping containers when necessary and not merely to examine the exterior of cartons or boxes in which smuggled goods might be concealed. During virtually the entire history of our country—whether contraband was transported in a horse-drawn carriage, a 1921 roadster, or a modern automobile—it has been assumed that a lawful search of a vehicle would include a search of any container that might conceal the object of the search." *Id.*, at 820, n. 26.

*Ross* summarized its holding as follows: "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part of the vehicle and its contents* that may conceal the object of the search." *Id.*, at 825 (emphasis added). And our later cases describing *Ross* have characterized it as applying broadly to *all* containers within a car, without qualification as to ownership. See, *e. g.*, *California* v. *Acevedo*, 500 U. S. 565, 572 (1991) ("[T]his Court in *Ross* took the critical step of saying that closed containers in cars could be searched without a warrant because of their presence within the automobile"); *United States* v. *Johns*, 469 U. S. 478, 479–480 (1985) (*Ross* "held that if police officers have probable cause to search a lawfully stopped vehicle, they may conduct a warrantless search of any containers found inside that may conceal the object of the search").

To be sure, there was no passenger in *Ross*, and it was not claimed that the package in the trunk belonged to anyone other than the driver. Even so, if the rule of law that *Ross* announced were limited to contents belonging to the driver, or contents other than those belonging to passengers, one would have expected that substantial limitation to be ex-

pressed. And, more importantly, one would have expected that limitation to be apparent in the historical evidence that formed the basis for *Ross*'s holding. In fact, however, nothing in the statutes *Ross* relied upon, or in the practice under those statutes, would except from authorized warrantless search packages belonging to passengers on the suspect ship, horse-drawn carriage, or automobile.

Finally, we must observe that the analytical principle underlying the rule announced in *Ross* is fully consistent—as respondent's proposal is not—with the balance of our Fourth Amendment jurisprudence. *Ross* concluded from the historical evidence that the permissible scope of a warrantless car search "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." 456 U. S., at 824. The same principle is reflected in an earlier case involving the constitutionality of a search warrant directed at premises belonging to one who is not suspected of any crime: "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher* v. *Stanford Daily*, 436 U. S. 547, 556 (1978). This statement was illustrated by citation and description of *Carroll*, 267 U. S., at 158–159, 167. 436 U. S., at 556–557.

In sum, neither *Ross* itself nor the historical evidence it relied upon admits of a distinction among packages or containers based on ownership. When there is probable cause to search for contraband in a car, it is reasonable for police officers—like customs officials in the founding era—to examine packages and containers without a showing of individualized probable cause for each one. A passenger's personal belongings, just like the driver's belongings or containers attached to the car like a glove compartment, are "in" the car, and the officer has probable cause to search for contraband *in* the car.

Even if the historical evidence, as described by *Ross*, were thought to be equivocal, we would find that the balancing of the relative interests weighs decidedly in favor of allowing searches of a passenger's belongings. Passengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars, which "trave[l] public thoroughfares," *Cardwell* v. *Lewis*, 417 U. S. 583, 590 (1974), "seldom serv[e] as . . . the repository of personal effects," *ibid.*, are subjected to police stop and examination to enforce "pervasive" governmental controls "[a]s an everyday occurrence," *South Dakota* v. *Opperman*, 428 U. S. 364, 368 (1976), and, finally, are exposed to traffic accidents that may render all their contents open to public scrutiny.

In this regard—the degree of intrusiveness upon personal privacy and indeed even personal dignity—the two cases the Wyoming Supreme Court found dispositive differ substantially from the package search at issue here. *United States* v. *Di Re*, 332 U. S. 581 (1948), held that probable cause to search a car did not justify a body search of a passenger. And *Ybarra* v. *Illinois*, 444 U. S. 85 (1979), held that a search warrant for a tavern and its bartender did not permit body searches of all the bar's patrons. These cases turned on the unique, significantly heightened protection afforded against searches of one's person. "Even a limited search of the outer clothing . . . constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." *Terry* v. *Ohio*, 392 U. S. 1, 24–25 (1968). Such traumatic consequences are not to be expected when the police examine an item of personal property found in a car.[1]

---

[1] The dissent begins its analysis, *post*, at 309–310 (opinion of STEVENS, J.), with an assertion that this case is governed by our decision in *United States* v. *Di Re*, 332 U. S. 581 (1948), which held, as the dissent describes it, that the automobile exception to the warrant requirement did not justify "searches of the passenger's pockets and the space between his shirt and underwear," *post*, at 309. It attributes that holding to "the settled dis-

Whereas the passenger's privacy expectations are, as we have described, considerably diminished, the governmental interests at stake are substantial. Effective law enforcement would be appreciably impaired without the ability to search a passenger's personal belongings when there is reason to believe contraband or evidence of criminal wrongdoing is hidden in the car. As in all car-search cases, the "ready mobility" of an automobile creates a risk that the evidence or contraband will be permanently lost while a warrant is obtained. *California* v. *Carney,* 471 U. S. 386, 390 (1985). In addition, a car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the driver, and have the same interest in

---

tinction between drivers and passengers," rather than to a distinction between search of the person and search of property, which the dissent claims is "newly minted" by today's opinion—a "new rule that is based on a distinction between property contained in clothing worn by a passenger and property contained in a passenger's briefcase or purse." *Post,* at 309, 309–310.

In its peroration, however, the dissent quotes extensively from Justice Jackson's opinion in *Di Re,* which makes it very clear that it is *precisely* this distinction between search of the person and search of property that the case relied upon:

"The Government says it would not contend that, armed with a search warrant for a residence only, it could search all persons found in it. But an occupant of a house could be used to conceal this contraband on his person quite as readily as can an occupant of a car." 332 U. S., at 587 (quoted *post,* at 312).

Does the dissent really believe that Justice Jackson was saying that a house search could not inspect *property* belonging to persons found in the house—say a large standing safe or violin case belonging to the owner's visiting godfather? Of course that is not what Justice Jackson meant at all. He was referring *precisely* to that "distinction between property contained in clothing worn by a passenger and property contained in a passenger's briefcase or purse" that the dissent disparages, *post,* at 309. This distinction between searches of the person and searches of property is assuredly *not* "newly minted," see *post,* at 310. And if the dissent thinks "pockets" and "clothing" do not count as part of the person, it must believe that the only searches of the person are strip searches.

concealing the fruits or the evidence of their wrongdoing. Cf. *Maryland* v. *Wilson*, 519 U. S. 408, 413–414 (1997). A criminal might be able to hide contraband in a passenger's belongings as readily as in other containers in the car, see, *e. g., Rawlings* v. *Kentucky*, 448 U. S. 98, 102 (1980)—perhaps even surreptitiously, without the passenger's knowledge or permission. (This last possibility provided the basis for respondent's defense at trial; she testified that most of the seized contraband must have been placed in her purse by her traveling companions at one or another of various times, including the time she was "half asleep" in the car.)

To be sure, these factors favoring a search will not always be present, but the balancing of interests must be conducted with an eye to the generality of cases. To require that the investigating officer have positive reason to believe that the passenger and driver were engaged in a common enterprise, or positive reason to believe that the driver had time and occasion to conceal the item in the passenger's belongings, surreptitiously or with friendly permission, is to impose requirements so seldom met that a "passenger's property" rule would dramatically reduce the ability to find and seize contraband and evidence of crime. Of course these requirements would not attach (under the Wyoming Supreme Court's rule) until the police officer knows or has reason to know that the container belongs to a passenger. But once a "passenger's property" exception to car searches became widely known, one would expect passenger-confederates to claim everything as their own. And one would anticipate a bog of litigation—in the form of both civil lawsuits and motions to suppress in criminal trials—involving such questions as whether the officer should have believed a passenger's claim of ownership, whether he should have inferred ownership from various objective factors, whether he had probable cause to believe that the passenger was a confederate, or to believe that the driver might have introduced the contraband

into the package with or without the passenger's knowledge.[2] When balancing the competing interests, our determinations of "reasonableness" under the Fourth Amendment must take account of these practical realities. We think they militate in favor of the needs of law enforcement, and against a personal-privacy interest that is ordinarily weak.

Finally, if we were to invent an exception from the historical practice that *Ross* accurately described and summarized, it is perplexing why that exception should protect only property belonging to a passenger, rather than (what seems much more logical) property belonging to *anyone* other than the driver. Surely Houghton's privacy would have been invaded to the same degree whether she was present or absent when her purse was searched. And surely her presence in the car with the driver provided more, rather than less, reason to believe that the two were in league. It may ordinarily be easier to identify the property as belonging to someone other than the driver when the purported owner is present to identify it—but in the many cases (like *Ross* itself) where the car is seized, that identification may occur later, at the sta-

---

[2] The dissent is "confident in a police officer's ability to apply a rule requiring a warrant or individualized probable cause to search belongings that are . . . obviously owned by and in the custody of a passenger," *post*, at 311. If this is the dissent's strange criterion for warrant protection (*"obviously* owned by and in the custody of") its preceding paean to the importance of preserving passengers' privacy rings a little hollow on re-hearing. Should it not be enough if the passenger *says* he owns the brief-case, and the officer has no concrete reason to believe otherwise? Or would the dissent consider *that* an example of "obvious" ownership? On reflection, it seems not at all obvious precisely what constitutes obvi-ousness—and so even the dissent's on-the-cheap protection of passen-gers' privacy interest in their property turns out to be unclear, and hence unadministrable. But maybe the dissent does not mean to propose an obviously-owned-by-and-in-the-custody-of test after all, since a few sen-tences later it endorses, *simpliciter*, "a rule requiring a warrant or indi-vidualized probable cause to search passenger belongings," *post*, at 312. For the reasons described in text, that will not work.

tion house; and even at the site of the stop one can readily imagine a package clearly marked with the owner's name and phone number, by which the officer can confirm the driver's denial of ownership. The sensible rule (and the one supported by history and case law) is that such a package may be searched, whether or not its owner is present as a passenger or otherwise, because it may contain the contraband that the officer has reason to believe is in the car.

\* \* \*

We hold that police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search. The judgment of the Wyoming Supreme Court is reversed.

*It is so ordered.*

JUSTICE BREYER, concurring.

I join the Court's opinion with the understanding that history is meant to inform, but not automatically to determine, the answer to a Fourth Amendment question. *Ante,* at 299–300. I also agree with the Court that when a police officer has probable cause to search a car, say, for drugs, it is reasonable for that officer also to search containers within the car. If the police must establish a container's ownership prior to the search of that container (whenever, for example, a passenger says "that's mine"), the resulting uncertainty will destroy the workability of the bright-line rule set forth in *United States* v. *Ross,* 456 U. S. 798 (1982). At the same time, police officers with probable cause to search a car for drugs would often have probable cause to search containers regardless. Hence a bright-line rule will authorize only a limited number of searches that the law would not otherwise justify.

At the same time, I would point out certain limitations upon the scope of the bright-line rule that the Court de-

scribes. Obviously, the rule applies only to automobile searches. Equally obviously, the rule applies only to containers found within automobiles. And it does not extend to the search of a person found in that automobile. As the Court notes, and as *United States* v. *Di Re,* 332 U. S. 581, 586–587 (1948), relied on heavily by JUSTICE STEVENS' dissent, makes clear, the search of a person, including even "'a limited search of the outer clothing,'" *ante,* at 303 (quoting *Terry* v. *Ohio,* 392 U. S. 1, 24–25 (1968)), is a very different matter in respect to which the law provides "significantly heightened protection." *Ante,* at 303; cf. *Ybarra* v. *Illinois,* 444 U. S. 85, 91 (1979); *Sibron* v. *New York,* 392 U. S. 40, 62–64 (1968).

Less obviously, but in my view also important, is the fact that the container here at issue, a woman's purse, was found at a considerable distance from its owner, who did not claim ownership until the officer discovered her identification while looking through it. Purses are special containers. They are repositories of especially personal items that people generally like to keep with them at all times. So I am tempted to say that a search of a purse involves an intrusion so similar to a search of one's person that the same rule should govern both. However, given this Court's prior cases, I cannot argue that the fact that the container was a purse *automatically* makes a legal difference, for the Court has warned against trying to make that kind of distinction. *United States* v. *Ross, supra,* at 822. But I can say that it would matter if a woman's purse, like a man's billfold, were attached to her person. It might then amount to a kind of "outer clothing," *Terry* v. *Ohio, supra,* at 24, which under the Court's cases would properly receive increased protection. See *post,* at 312–313 (STEVENS, J., dissenting) (quoting *United States* v. *Di Re, supra,* at 587). In this case, the purse was separate from the person, and no one has claimed that, under those circumstances, the type of container makes a difference. For that reason, I join the Court's opinion.

JUSTICE STEVENS, with whom JUSTICE SOUTER and JUSTICE GINSBURG join, dissenting.

After Wyoming's highest court decided that a state highway patrolman unlawfully searched Sandra Houghton's purse, the State of Wyoming petitioned for a writ of certiorari. The State asked that we consider the propriety of searching an automobile *passenger's* belongings when the government has developed probable cause to search the vehicle for contraband based on the *driver's* conduct. The State conceded that the trooper who searched Houghton's purse lacked a warrant, consent, or "probable cause specific to the purse or passenger." Pet. for Cert. i. In light of our established preference for warrants and individualized suspicion, I would respect the result reached by the Wyoming Supreme Court and affirm its judgment.

In all of our prior cases applying the automobile exception to the Fourth Amendment's warrant requirement, either the defendant was the operator of the vehicle and in custody of the object of the search, or no question was raised as to the defendant's ownership or custody.[1] In the only automobile case confronting the search of a passenger defendant— *United States* v. *Di Re*, 332 U. S. 581 (1948)—the Court held that the exception to the warrant requirement did not apply. *Id.*, at 583–587 (addressing searches of the passenger's pockets and the space between his shirt and underwear, both of which uncovered counterfeit fuel rations). In *Di Re*, as here, the information prompting the search directly implicated the driver, not the passenger. Today, instead of adhering to the settled distinction between drivers and passengers, the Court fashions a new rule that is based on a distinction between property contained in clothing worn by

---

[1] See, *e. g., California* v. *Acevedo*, 500 U. S. 565 (1991); *California* v. *Carney*, 471 U. S. 386 (1985); *United States* v. *Johns*, 469 U. S. 478 (1985); *United States* v. *Ross*, 456 U. S. 798 (1982); *Carroll* v. *United States*, 267 U. S. 132 (1925); 3 W. LaFave, Search and Seizure § 7.2(c), pp. 487–488, and n. 113 (3d ed. 1996); *id.*, § 7.2(d), at 506, n. 167.

a passenger and property contained in a passenger's brief-case or purse. In cases on both sides of the Court's newly minted test, the property is in a "container" (whether a pocket or a pouch) located in the vehicle. Moreover, unlike the Court, I think it quite plain that the search of a passenger's purse or briefcase involves an intrusion on privacy that may be just as serious as was the intrusion in *Di Re*. See, *e. g., New Jersey* v. *T. L. O.*, 469 U. S. 325, 339 (1985); *Ex parte Jackson*, 96 U. S. 727, 733 (1878).

Even apart from *Di Re*, the Court's rights-restrictive approach is not dictated by precedent. For example, in *United States* v. *Ross*, 456 U. S. 798 (1982), we were concerned with the interest of the driver in the integrity of "his automobile," *id.*, at 823, and we categorically rejected the notion that the scope of a warrantless search of a vehicle might be "defined by the nature of the container in which the contraband is secreted," *id.*, at 824. "Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Ibid.* We thus disapproved of a possible container-based distinction between a man's pocket and a woman's pocketbook. Ironically, while we concluded in *Ross* that "[p]robable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab," *ibid.*, the rule the Court fashions would apparently permit a warrantless search of a passenger's briefcase if there is probable cause to believe the taxidriver had a syringe somewhere in his vehicle.

Nor am I persuaded that the mere spatial association between a passenger and a driver provides an acceptable basis for presuming that they are partners in crime or for ignoring privacy interests in a purse.[2] Whether or not the Fourth

---

[2] See *United States* v. *Di Re*, 332 U. S. 581, 587 (1948) ("We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled"); *Chandler* v. *Miller*, 520 U. S. 305, 308 (1997) (emphasizing in-

Amendment required a warrant to search Houghton's purse, cf. *Carroll* v. *United States,* 267 U. S. 132, 153 (1925), at the very least the trooper in this case had to have probable cause to believe that her purse contained contraband. The Wyoming Supreme Court concluded that he did not. 956 P. 2d 363, 372 (1998); see App. 20–21.

Finally, in my view, the State's legitimate interest in effective law enforcement does not outweigh the privacy concerns at issue.[3] I am as confident in a police officer's ability to apply a rule requiring a warrant or individualized probable cause to search belongings that are—as in this case—obviously owned by and in the custody of a passenger as is the Court in a "passenger-confederate[']s" ability to circumvent the rule. *Ante,* at 305. Certainly the ostensible clarity of the Court's rule is attractive. But that virtue is insufficient justification for its adoption. *Arizona* v. *Hicks,* 480 U. S.

---

dividualized suspicion); *Ybarra* v. *Illinois,* 444 U. S. 85, 91, 94–96 (1979) (explaining that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person," and discussing *Di Re*); *Brown* v. *Texas,* 443 U. S. 47, 52 (1979); *Sibron* v. *New York,* 392 U. S. 40, 62–63 (1968); see also *United States* v. *Padilla,* 508 U. S. 77, 82 (1993) *(per curiam)* ("Expectations of privacy and property interests govern the analysis of Fourth Amendment search and seizure claims. Participants in a criminal conspiracy may have such expectations or interests, but the conspiracy itself neither adds to nor detracts from them").

[3] To my knowledge, we have never restricted ourselves to a two-step Fourth Amendment approach wherein the privacy and governmental interests at stake must be considered only if 18th-century common law "yields no answer." *Ante,* at 299. Neither the precedent cited by the Court, nor the majority's opinion in this case, mandate that approach. In a later discussion, the Court does attempt to address the contemporary privacy and governmental interests at issue in cases of this nature. *Ante,* at 303–306. Either the majority is unconvinced by its own recitation of the historical materials, or it has determined that considering additional factors is appropriate in any event. The Court does not admit the former; and of course the latter, standing alone, would not establish uncertainty in the common law as the prerequisite to looking beyond history in Fourth Amendment cases.

321, 329 (1987); *Mincey* v. *Arizona*, 437 U. S. 385, 393 (1978). Moreover, a rule requiring a warrant or individualized probable cause to search passenger belongings is every bit as simple as the Court's rule; it simply protects more privacy.

I would decide this case in accord with what we *have* said about passengers and privacy, rather than what we *might have* said in cases where the issue was not squarely presented. See *ante*, at 301–302. What Justice Jackson wrote for the Court 50 years ago is just as sound today:

> "The Government says it would not contend that, armed with a search warrant for a residence only, it could search all persons found in it. But an occupant of a house could be used to conceal this contraband on his person quite as readily as can an occupant of a car. Necessity, an argument advanced in support of this search, would seem as strong a reason for searching guests of a house for which a search warrant had issued as for search of guests in a car for which none had been issued. By a parity of reasoning with that on which the Government disclaims the right to search occupants of a house, we suppose the Government would not contend that if it had a valid search warrant for the car only it could search the occupants as an incident to its execution. How then could we say that the right to search a car without a warrant confers greater latitude to search occupants than a search by warrant would permit?
>
> "We see no ground for expanding the ruling in the *Carroll* case to justify this arrest and search as incident to the search of a car. We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." *Di Re*, 332 U. S., at 587.

Accord, *Ross*, 456 U. S., at 823, 825 (the proper scope of a warrantless automobile search based on probable cause is "no broader" than the proper scope of a search authorized

by a warrant supported by probable cause).[4]  Instead of applying ordinary Fourth Amendment principles to this case, the majority extends the automobile warrant exception to allow searches of passenger belongings based on the driver's misconduct.  Thankfully, the Court's automobile-centered analysis limits the scope of its holding.  But it does not justify the outcome in this case.

I respectfully dissent.

---

[4] In response to this dissent the Court has crafted an imaginative footnote suggesting that the *Di Re* decision rested, not on Di Re's status as a mere occupant of the vehicle and the importance of individualized suspicion, but rather on the intrusive character of the search.  See *ante*, at 303–304, n. 1.  That the search of a safe or violin case would be less intrusive than a strip search does not, however, persuade me that the *Di Re* case would have been decided differently if Di Re had been a woman and the gas coupons had been found in her purse.  Significantly, in commenting on the *Carroll* case immediately preceding the paragraphs that I have quoted in the text, the *Di Re* Court stated: "But even the National Prohibition Act did not direct the arrest of all occupants but only of the person in charge of the offending vehicle, though there is better reason to assume that no passenger in a car loaded with liquor would remain innocent of knowledge of the car's cargo than to assume that a passenger must know what pieces of paper are carried in the pockets of the driver." *United States* v. *Di Re*, 332 U. S., at 586–587.