

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-9-2003

# USA v. Davilla

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2707

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Davilla" (2003). *2003 Decisions.* Paper 383.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/383

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2707
_____

UNITED STATES OF AMERICA

v.

MIGUEL O. DAVILLA
a/k/a MIGUEL GONZALEZ BERRIOS

Miguel Davilla, Appellant

_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 01-CR-00732-1)
District Judge: Honorable John R. Padova

_____

Submitted Under Third Circuit LAR 34.1(a)
June 23, 2003
Before: SLOVITER, AMBRO, BECKER,
Circuit Judges.

(Filed July 9, 2003)
_____

OPINION
_____

BECKER, Circuit Judge.

Defendant Miguel O. Davilla, a state parolee, was charged in a single-count

indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. §

922(g)(1). After the District Court denied his motion to suppress the gun, Davilla entered

a plea of guilty to the indictment, reserving his right to appeal the adverse suppression ruling. This is an appeal from the District Court's order denying Davilla's motion to suppress physical evidence found by state parole agents during a search of his apartment. Because we conclude that the state parole agents had reasonable suspicion to conduct the search, we will affirm. We have jurisdiction under 18 U.S.C. § 1291.

## I.

On July 31, 2001, a team of state parole officers, including Agent Amy Clewell, Davilla's parole officer, decided to investigate whether Davilla was abiding by an 8:00 p.m. curfew. At about 8:30 p.m. the parole officers found Davilla drinking a can of Coors Lite on the corner outside his approved residence. They proceeded to arrest him for three violations of his conditions of parole: the consumption of alcohol, the violation of the curfew, and the failure to appear for a scheduled meeting with his state parole agent.[1]

After being handcuffed Davilla broke free and fled, but was caught two blocks away. Parole Agent David Guglielmi recommended that they search Davilla's apartment for evidence of drug activity. After Davilla had been secured, the parole agents received the supervisor's permission to search his apartment and they conducted a search. Inside the apartment they found, among other things, drugs, drug paraphernalia, cash, and a gun.

Davilla claims that the parole agents lacked reasonable suspicion to justify the search they conducted the day he was arrested. Agent Guglielmi testified that his

---

[1]On July 27, Davilla had failed to report to a parole meeting with Agent Clewell.

suspicion was based on several grounds. He testified that Davilla had lost his construction job in January 2001, yet he was able to keep up with his household expenses. In addition, Davilla had been seen by a parole officer a few weeks before his arrest counting what appeared to be a large amount of currency on the corner outside his residence. Agent Clewell testified that the neighborhood where Davilla was seen counting money is a high drug trafficking area, and that in her experience counting a large amount of money on a street corner may indicate drug dealing.

Agent Guglielmi also testified that some time during the Spring of 2001 he went to Davilla's apartment. Davilla was not home and agent Guglielmi decided to wait in the car. While waiting in his car he twice observed people pull up outside the apartment and call up to Davilla. Guglielmi testified that this seemed suspicious to him and it was likely that someone was there to purchase drugs. However, Guglielmi did not note this incident in his parole supervision reports for Davilla (Guglielmi was Davilla's parole officer at the time).

In addition, the parole authorities had received information from a confidential informant regarding Davilla's association with parolee Oscar Colon, who had been Davilla's co-defendant in a murder case. In December 1999, the confidential informant told parole authorities that Davilla was associating with Colon, and that Colon was involved with drugs and weapons. In September 2000, the same informant told parole authorities that Colon and Davilla had assaulted another parolee. This information was

corroborated by a witness, who identified the assailants as Colon and Davilla. However,

the assault victim was unable to identify them. Additionally, in October 2000, the

informant told authorities that Davilla was associating with Colon at a bar where there

was illegal drug dealing. Agent Guglielmi was familiar with all the information and

interpreted it to mean that Davilla was involved with Colon in drug dealing.

## II.

The only issue on appeal is whether the District Court erred in finding that, under

the lower Fourth Amendment standard applicable to parolees, the state parole agents had

reasonable suspicion sufficient to justify the search.[2]

Generally, the Fourth Amendment authorizes government officials to have a

warrant issued upon a finding of probable cause to conduct a search. However, the

"touchstone of the Fourth Amendment is reasonableness." *United States v. Knights*, 534

U.S. 112, 118 (2001). In order to determine the reasonableness of a search the court must

assess "on the one hand, the degree to which it intrudes upon an individual's privacy and,

on the other, the degree to which it is needed for the promotion of legitimate

governmental interests." *Id.* at 119, quoting *Wyoming v. Houghton*, 526 U.S. 295 (1999).

Under *Griffin v. Wisconsin*, 483 U.S. 868 (1987), the 'special needs' of the

---

[2]We review the factual findings of the District Court for clear error. *See*, *United States v. Brown*, 159 F.3d 147, 148 (3d Cir. 1998). This Court exercises plenary review of a district court's determination of whether police had reasonable suspicion to conduct a search. *See*, *Ornelas v. United* States, 517 U.S. 690, 699-700 (1996); *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000).

probation system are to be taken into consideration under the Fourth Amendment's 'reasonableness' analysis, and might justify warrantless searches based on a reduced level of suspicion. In *United States v. Hill*, 967 F.2d 902 (3d Cir. 1992), this Court extended the holding of *Griffin* to parolees. The *Hill* Court concluded that a warrantless search of a parolee's property based upon reasonable suspicion was reasonable under the Fourth Amendment. We apply that standard. We also note that at the time of his release from prison, parolee Davilla consented to warrantless searches of his apartment by parole agents. Additionally, Pennsylvania parole agents are empowered by statute to conduct searches of parolees' property without a warrant upon reasonable suspicion. 61 P.S. § 331.27a. Davilla's consent to warrantless searches diminished his reasonable expectation of privacy. *See, Knights*, 534 U.S. at 120.

## III.

Two of our recent cases involving parole searches are helpful in guiding our analysis in determining whether, under the circumstances, the state parole agents had reasonable suspicion to justify the search of Davilla's apartment.

Davilla argues that this case is analogous to *United States v. Baker*, 221 F.3d 438 (3rd Cir. 2000). In *Baker*, we found a search of parolee Baker's trunk was not supported by reasonable suspicion. In *Baker*, as a condition of his parole, the defendant was not permitted to drive without a license. Nevertheless, he drove to the state parole office for a scheduled meeting with his parole officer. A parole officer asked Baker whether he had a

5

driver's license. He said that he did not. Baker was arrested when attempting to drive away after the meeting. After arresting Baker, the agents searched the car's trunk, where they found what they suspected to be drug paraphernalia. The officers then conducted a warrantless search of Baker's home, where they found numerous guns and sixty six grams of heroin. In *Baker*, we concluded that "neither Baker's violation of his parole by driving a vehicle nor his failure to document that he owned the vehicle can give rise to a reasonable suspicion that he was committing other, unspecified, unrelated parole violations–the evidence of which might be found in the trunk." *Id.* At 445. We held that "the parole officers' actions were not based on any 'specific facts' giving rise to suspicion that there would be some evidence of a further violation of parole in the trunk." *Id.* at 444.

This case is distinguishable from *Baker*. Unlike *Baker*, the state parole officers in this case had indications that contraband might be found in Davilla's apartment. They had information that Davilla was associating with Colon at a bar where there was illegal drug dealing; that Davilla and Colon had assaulted another parolee; that he had been seen counting cash, in spite of the fact that he had been unemployed since January; that people had come and called to his window; and finally he attempted to escape when the agents were apprehending him.

In *United States v. Hill*, 967 F.2d 902 (3rd Cir. 1992), parole agents conducted a search based on a report from the parolee's estranged wife that he had committed several

6

parole violations, including keeping drugs and guns in the home that they jointly owned. We concluded that these facts were specific enough to give rise to reasonable suspicion. We reasoned that the parole agent's interest in conducting a search of the parolee's property did not end upon his arrest, and concluded that a search conducted after Hill's arrest pursuant to further information provided by Mrs. Hill was supported by reasonable suspicion. *Hill* supports the District Court's order here.

The concept of reasonable suspicion is somewhat abstract and elusive. *United States v. Arvizu*, 534 U.S. 266, 274 (2002). When making reasonable-suspicion determinations "courts must look at the 'totality of the circumstances' of each case."*Arvizu*, 534 U.S. at 274. The fact that each of the observations of the parole authorities is by itself readily susceptible to an innocent explanation is entitled to no weight. *See id.* at 275. In determining whether a search is supported by reasonable suspicion, officers are "allowed to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* at 273, quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981).

Each of the facts relied upon by Guglielmi may be readily explainable as innocent behavior. For example, the people calling up to Davilla's widow might just have wanted to socialize with him. Davilla could have been counting a wad of one dollar bills after getting change in a store when he was seen by Martinez. However, the question is not

whether each of these facts alone has an innocent explanation. The question is whether the totality of the circumstances, in light of the agents' experience and specialize training, would allow them to conclude through inferences and deductions that there was a reasonable suspicion that Davilla's apartment might contain evidence of illegal activity.

Guglielmi, who had observed the people calling up to Davilla's window, testified that this seemed suspicious and that it was possible that someone was there to purchase drugs. Guglielmi also testified that it was odd that Davilla was able to keep up with all his household expenses, although Davilla had no legitimate source of income. For the same reason, it was odd that Davilla was counting what appeared to be a large amount of money in the street. In fact, Agent Clewell testified that the neighborhood where Davilla was seen counting money is a high drug trafficking area and that in her experience counting a large amount of money on a street corner may indicate drug dealing. In addition, Guglielmi had information that Davilla was associating with Colon at a bar where there was illegal drug dealing and that they had assaulted another parolee. Based on this information, Guglielmi, a 15-year veteran parole officer, recommended the search of Davilla's apartment. We find that the cumulative effect of this information justifies Guglielmi's conclusion that evidence of illegal activity might be found in Davilla's apartment.

Davilla argues that the District Court's finding that he was involved in drug sales with Oscar Colon was clearly erroneous, and that without this particular finding it is clear

8

that the officers did not have reasonable suspicion for the search. However, even if the District Court's finding was clearly erroneous, the cumulative effect of the remaining evidence is sufficient to justify the conclusion that the search was reasonable. Thus, the order of the District Court will be affirmed.

TO THE CLERK:

Please file the foregoing Opinion.

BY THE COURT:

/s/ Edward R. Becker
Circuit Judge