STATE OF MAINE                                          SUPERIOR COURT
PISCATAQUIS, SS.                                        DOCKET NO CR-08-084


STATE OF MAINE


v.                                            ORDER    RECEIVED & FILED


JEFFREY A. WITHAM                                      APR 06 2010

                                                      PISCATAQUIS COUNTY
                                                         Clerk's Office


Hearing on this motion to suppress was concluded and memoranda filed by July 23, 2009. The State was represented by counsel, Christopher Almy, Esq., while the defendant was present and represented by counsel, Randy Day, Esq. In his motion the defendant asserts that the search upon which this prosecution is based, conducted pursuant to a random search condition of his probation, was illegal because the condition was improperly imposed. Upon reviewing filed in this case, the Court recognized another possible issue raised by the defendant's motion to suppress and on October 16, 2009, invited the parties to file further memoranda if they wished. This issue is whether evidence obtained as a result a of a search conducted pursuant to an appropriately imposed random search probation condition was admissible in a prosecution for new charges based on the seizure of evidence during that search. The State argues that evidence obtained pursuant to such a random search and testing provision is admissible even if there was no other cause or reason supporting the search.

## FACTS

A jury found Jeffrey Witham guilty of burglary, violation of a condition of release, two counts of violation of a protective order, and stalking in Hancock Superior

1

Court docket number CR-05-249. A sentencing hearing on these charges was conducted on August 25, 2006, at which the attorneys for the State and defendant argued for different dispositions. After listening to the arguments of counsel, the presiding justice imposed a sentence that included placing the defendant on probation for two years, with a specific condition that he submit to random search and testing for alcohol, drugs, firearms, and dangerous weapons. During the sentencing proceeding, neither the State nor defendant addressed whether a random search and testing provision should be included as a special condition of probation and neither alcohol nor drugs was mentioned as having a role in the defendant's criminal behavior.

Having been released from the Department of Corrections after serving the unsuspended portion of the Hancock sentence, defendant eventually moved to Milo, Maine where it is claimed by the State that he stayed with or resided in some capacity[1] with Alysha Chadwick. On November 17, 2008, Probation Officer Dan Dixon was contacted by family members of Ms. Chadwick who expressed their concerns about her safety while she was residing with Mr. Witham. Mr. Dixon checked the defendant's probation conditions and confirmed that they included the requirement that he submit to random search and testing. He then went to the mobile home where he believed Mr. Witham was staying and found him standing outside. Mr. Witham told Mr. Dixon that it wasn't his residence and that Mr. Dixon would have to wait until Ms. Chadwick came home. Within 5 minutes Ms. Chadwick arrived and then, without securing either the permission of Ms. Chadwick or the defendant, Mr. Dixon announced that he was going to search the mobile home. During the search, he seized evidence that the State intends to have admitted into evidence at trial in this case. At no time during the hearing was

---

[1] The State has not challenged defendant's standing to contest the legality of this search. Although defendant denied that he resided in the mobile home being searched and said that Alysha Chadwick, not he, could give permission to search, both men's and women's clothing were found inside.

Mr. Dixon asked or did he indicate that he had an articulable suspicion justifying his search of the premises, nor has the State argued that such a suspicion existed.

ANALYSIS

1. The Imposition of the Condition

Defendant argues that the Court improperly imposed the condition that he submit to random search and testing for alcohol, drugs, dangerous weapons, and firearms. Although 17-A M.R.S.A. § 1204 does not specifically authorize the condition "submit to random search and testing," it does authorize the court to impose conditions reasonably related to the rehabilitation of the offender or the protection of the public. 17-A M.R.S. § 1204(2-A)(M). In *State v. Bernier*, 486 A.2d 147, 150 (Me. 1985), the Law Court upheld the trial court's imposition of such a condition, by an evenly divided court and without discussion. Since then, The Law Court has evaluated whether a trial court has the authority to impose a requirement that a defendant submit to random search and testing as a bail condition. *State v. Ullring*, 1999 ME 183, 741 A.2d 1065.

The *Ullring* Court analyzed the issue by first determining whether the bail code authorized such a condition and by then determining whether imposing the condition violated the defendant's Fourth Amendment rights. *Ullring*, 1999 ME 183, ¶¶ 13, 21, 741 A.2d at 1068, 1071. This Court concludes that using this type of analysis would be useful in deciding the same issue in the analogous probation context. The *Ullring* Court decided that although the Maine Bail Code did not specifically authorize a random search provision, the trial court has the authority to impose such a condition under a "catch-all" provision of the Code when the judicial officer is of the opinion that the defendant should be prohibited from possessing alcohol, drugs, or firearms; a random search provision is necessary to ensure that the possession prohibitions won't be violated; and the above conditions are the least restrictive alternatives that will further

3

the purposes of bail. *Id.* ¶ 20, 741 A.2d at 1071. Similarly, this Court finds that imposing the condition in the probation context is permissible when the same standards can be met. Next, the *Ullring* Court addressed whether imposing the condition violated the defendant's constitutional rights, finding that a bail condition authorizing random search and testing can only meet Fourth Amendment scrutiny if the condition is reasonable under the circumstances. *Id.* ¶ 25, 741 A.2d at 1073. The Court stated that there are some situations in which the history and personal situation of the defendant, including the charges against him, can justify a determination by a judicial officer that a random search condition is both necessary and the least restrictive alternative to further the purposes of bail.

As applied to Mr. Witham, it is unfortunate that there was no discussion at the sentencing hearing concerning the imposition of the condition so that the specific reasons for its imposition could be discerned. A review of relevant sentencing factors, however, reveals that at the time of sentencing the defendant had a record of prior misdemeanor violations and a prior felony theft. Among the charges for sentencing were two convictions for violating a protection from abuse order and stalking, and the victim of those offenses was fearful and hyper-vigilant. The defendant was also being sentenced on a burglary conviction and violating conditions of release. Taking all of these factors into consideration, one could conclude that it was necessary to prohibit Mr. Witham from possessing dangerous weapons and firearms while he was on probation in order to ensure the safety of the victim of these offenses, or others. It was also reasonable to permit <u>random</u> searches because Mr. Witham had a demonstrated propensity to commit crimes and even violate bail conditions. Under these circumstances, the imposition of these bail conditions was necessary and also constituted the least restrictive alternative to further the purposes of bail. It could also

4

be argued that it is too late to challenge these conditions at a hearing on the motion to suppress, as was indicated, in the bail context, in *State v. Frederick Felch*, 2007 ME 88, 928 A.2d 1252. The Court does not address this issue, however, because it has already ruled that imposing the condition was appropriate.

Finally, since the Court's decision in *Bernier*, the United States Supreme Court has addressed search and seizure issues in cases in which the police conducted a search of a probationer pursuant to random search and testing conditions of probation. *U.S. v. Knights*, 534 U.S. 112, 122 S. Ct. 587, 151 L.Ed. 2d 497 (2001). The Court did not rule that it was impermissible to impose the condition.

2. The Lawfulness of the Search Conducted to the Condition

One could believe that any search conducted pursuant to a court imposed probation condition would itself be lawful because it was authorized by the court. This is not necessarily true. Fundamental to the Fourth Amendment is reasonableness and the reasonableness of a search is determined by assessing the degree to which it intrudes upon an individual's privacy in relation to the degree to which it is needed for the promotion of a legitimate governmental interest. *Knights*, 534 U.S. at 119,(citing *Wyoming v. Houghton*, 526 U.S. 295, 300, 143 L. Ed. 408, 119 S. Ct. 1297 (1999)). A California court sentenced Knights to probation for a drug offense and included a condition that he would submit his person, property, place of residence, vehicle, and personal effects to search at any time, with or without a search warrant, warrant of arrest, or reasonable cause, by any probation officer or law enforcement officer. Later, a law enforcement officer searched his apartment and found evidence of a new crime. As a result, a grand jury indicted Knights on the new offense and Knights moved to suppress the evidence that had been seized during the search based on the probation condition. In deciding the motion, the trial court ruled that the searching detective had

5

a reasonable suspicion justifying the search but granted the motion, concluding that the search was "investigatory" not "probationary".

After a series of appeals, the case came to the United States Supreme Court where the lower court ruling was reversed because it was ruled that there is no requirement that a search of this type be limited to a probationary purpose. In balancing the probationer's privacy interest with the governmental interest, the Court found that a probationer was more likely than the ordinary citizen to violate the law, conceal criminal activity, and dispose of incriminating evidence. It also found that probation was a form of criminal sanction, that a court could impose reasonable conditions that deprive probationers of some personal freedoms enjoyed by ordinary citizens, and that a search condition significantly diminishes a probationer's expectation of privacy. The Court then ruled that the warrantless search of the probationer's apartment, supported by reasonable suspicion, was lawful. In a footnote, the Court indicated that it was not deciding the question of whether the condition so diminished the probationer's expectation of privacy that a search based on no suspicion would have satisfied the reasonableness requirement of the Fourth Amendment. *Id.* at 120 n.6. This Court has found no ruling in any case in which a court has determined that a probationer's expectation of privacy is so diminished that a search based on the condition, but without any suspicion, was lawful. Although the state, in *Knights*, argued that the search was lawful because the probationer consented to the search by signing the form containing the conditions, the Court specifically did not decide the case on consent grounds, but found significance in the probationer's signing of the form as proof that the conditions were clearly expressed to the probationer. *Id.* at 119.

In 2007, the Supreme Court decided the same search issue with regard to parolees, instead of probationers, in *Samson v. California*, 547 U.S. 843, 126 S Ct. 2193, 165

L. Ed. 250. The *Samson* Court found that in evaluating the totality of the circumstances, including a parole condition that the parolee be subject to random search, and the fact that parole was an established variant of imprisonment, the parolee did not have any expectation of privacy that society would recognize as legitimate. It also found that the state's interest in supervising parolees, who were more likely to commit crimes than members of the general public, was substantial. In reaching these conclusions, the Court examined empirical evidence of parole recidivism rates and acknowledged the grave safety concerns that attended recidivism. The Court then upheld the lower court ruling that a suspicionless search of a parolee did not violate the Federal Constitution's Fourth Amendment. The Court compared the privacy expectations of parolees with those of probationers by concluding that both are on the continuum of state imposed punishments, but a parolee has a lower reasonable expectation of privacy than a probationer because parole is "stronger medicine," more akin to imprisonment than probation is. *Id.* at 850. Interestingly, the *Samson* Court indicated that it had granted certiorari to answer a question left open by *Knights*, the question of whether a condition of release could so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment. As in *Knights*, the Court did not decide the issue of whether the parolee's act of signing the conditions constituted consent to the search, but found that the act demonstrated that the parolee was aware of the conditions. *Id.* at 852.

In arguing that the search of Mr. Witham's "home" is constitutional, the State asks this Court to rule that a Maine probationer has no reasonable expectation of privacy. The Court declines to do so because it is clear that a person on probation has an expectation of privacy, but it is a reduced expectation. This Court concludes that evidence seized as a result of a warrantless search of a probationer's home pursuant to a

7

random search and testing provision is admissible in a prosecution for a new crime only when that officer has a reasonable suspicion that evidence of a crime or contraband is located inside the home[2]. This Court rules in this manner because the Supreme Court has clearly established that probationers have a greater expectation of privacy than parolees. If both were subject to suspicionless searches then they would, by definition, have the same absence of any reasonable expectation of privacy, yet the Court has ruled otherwise. Additionally, the *Samson* Court indicated that it was answering the question raised in *Knights* of whether a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment. It answered the question by placing only parolees, not probationers, in that category of people who can be searched without suspicion.

Permitting suspicionless searches of probationers by probation officers and law enforcement officers would constitute a tremendous departure from the original rationale supporting the search of probationers upon reasonable suspicion, as opposed to probable cause. This was emphasized in the parole context by the four *Samson* dissenters. *Samson*, 547 U.S. at 860-62. In a case decided before *Knights* that addressed the issue of random probation searches, the Supreme Court held that searches conducted by probation officers pursuant to a statute permitting probation officers to conduct random searches of probationers was lawful as a "special needs exception" to

---

[2] Although this holding may be contrary to commonly accepted views on this topic, its application is not as broad as one might think. It is limited to the admissibility of evidence in proceedings in which a new offense is alleged and does not address the admissibility of evidence in probation revocation proceedings. The exclusionary rule does not apply to probation revocation proceedings. *State v. Foisy*, 384 A.2d 42,44 (Me. 1978). The Court is also not deciding the issue of whether the defendant consented to the search by signing the probation conditions.

the warrant requirement, provided a reasonable suspicion supported the search. *Griffin v. Wisconsin*, 483 U.S. 868, 107 S. Ct. 3164, 97 L. Ed. 709 (1987) (. The "special need" was the need to effectively supervise individuals on probation. *Id.* at 875. The diminished expectation of privacy inherent in a "special needs" search was made more palatable to some by the general requirement that measures be in place to protect against the state actor's unfettered discretion. *See, e.g., Delaware v. Prouse*, 440 U.S. 648, 654-655, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). The scope of this type of search was broadened to include all law enforcement officers searching pursuant to a probation condition in *Knights*. Further expansion of this category of search to include suspicionless searches would be in derogation of the original rationale for the exception, the appropriate supervision of probationers by probation officers. It would transform this category of search into a tool used by law enforcement officers for the wholesale investigation of crime.[3]

This Court finds, therefore, that evidence seized in the search conducted in this case is admissible only if a reasonable suspicion supported the search by Probation Officer Dixon. The Court now turns to record to determine if such a suspicion existed and from his testimony, makes the following findings:

On November 17, 2008, Mr. Dixon met with the mother and step-father of Alysha Chadwick. They told him that she was living with Jeffrey Witham at a certain address in Milo. They expressed concern for her safety because she had not been answering phone calls, and suspected that he was being abusive to her, and that they were using illegal drugs. He also spoke with Ms. Chadwick's sister and half sister who provided the officer with statements about abuse that they observed from Mr. Witham toward

---

[3] Although there appear to be no state court decisions upholding suspicionless searches of probationers in this context, states vary in what level of suspicion is required and whether a search warrant is required. It is interesting to note that in Massachusetts, a search of a probationer can be conducted on reasonable suspicion, less than probable cause, but a warrant is still required. *See Commonwealth v. Lafrance*, 402 Mass. 789, 525 N.E.2d 379 (Mass. 1988).

9

Ms. Chadwick. Learning that Mr. Witham was on probation in Hancock County, Mr. Dixon called his probation officer there, Mr. Payson, and briefed him on the information. Payson told Dixon about the random search and testing provisions, indicated that Witham was supposed to be living in Hancock County, but had permission to visit the Milo area, and asked Dixon to perform a home check.

Based on this testimony, the Court finds that Mr. Dixon's search of the residence was supported by the existence of a reasonable suspicion that the defendant was violating his probation conditions by using alcohol and illegal drugs, committing a separate crime related to illegal drug possession, and by committing crimes related to domestic violence, such as assault. Mr. Dixon interviewed four of Ms. Chadwick's relatives to obtain this information. He received Mr. Payson's approval before searching and limited the search in scope to the things for which there a reasonable suspicion to search, such as alcohol, drugs and weapons. Although the testimony on this point could have been presented in greater detail, which would be required if the probable cause standard had to be met, it is clear that a reasonable suspicion existed. This was not a suspicionless sweep by law enforcement officers that had no probationary purpose, but a restricted search initiated by a probation officer to further the goals of probation enforcement. Although the State did not argue that a reasonable suspicion existed, and Mr. Dixon was not specifically asked if he had such a suspicion at the time of the search, it is clear that he in fact entertained such a suspicion. Why else did he speak with four family members about their concerns, call the defendant's supervising probation officer, share information with him, and get his approval before conducting the search? If he had not acted based on the suspicion, he would have searched based on the condition alone, without fact-finding and research.

10

Based on this analysis, the Defendant's motion to suppress is DENIED

The clerk shall incorporate this Order into the docket by reference.

Dated: April 2, 2010

WILLIAM R. ANDERSON
JUSTICE, SUPERIOR COURT