**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-30097 |
| Plaintiff - Appellee, | D.C. No. 2:10-cr-00134-EFS-1 |
| v. |  |
| ROBERT ELLIS BLUNT, | MEMORANDUM* |
| Defendant - Appellant. |  |

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted March 8, 2013
Seattle, Washington

Before: EBEL,** W. FLETCHER, and RAWLINSON, Circuit Judges.

Defendant-Appellant Robert Ellis Blunt appeals his conviction for

being a felon in possession of firearms and ammunition, in violation of 18

U.S.C. § 922(g)(1).

---

      \*       This disposition is not appropriate for publication and is not
precedent except as provided by 9th Cir. R. 36-3.
      \*\*      The Honorable David M. Ebel, Senior Circuit Judge for the Tenth
Circuit, sitting by designation.

**I.**

The district court properly denied Blunt's motion to suppress the firearms evidence discovered in the trunk of Kevin Wennig's vehicle.

As a threshold matter, whether police unlawfully impounded the vehicle under Washington law is irrelevant; officers twice obtained owner–operator Wennig's consent to search the vehicle: once before searching the car's passenger compartment, and again before searching the vehicle's locked trunk. See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973) ("[A] search conducted pursuant to a valid consent is constitutionally permissible.").

Blunt also has standing problems. At best, as a passenger without a possessory interest in Wennig's vehicle, Blunt can challenge only the search of his sealed "Boeing" bag that officers discovered in the trunk of Wennig's car. See Rakas v. Illinois, 439 U.S. 128, 148-49 (1978) ("[T]he trunk of an automobile" is an area "in which a passenger qua passenger simply would not normally have a legitimate expectation of privacy.").

To that end, even assuming Wennig's consent to the trunk search did not independently justify the search of Blunt's "Boeing" bag, officers had developed probable cause to search the vehicle by the time they discovered the "Boeing" bag. Thus, "it [was] reasonable for [them] . . . to examine

2

[the bag] without a showing of individualized probable cause" to search that item in particular. Wyoming v. Houghton, 526 U.S. 295, 302 (1999); accord United States v. Ross, 456 U.S. 798, 825 (1982). Specifically, when officers opened the car's trunk, they found several rifles wrapped in a red blanket and a scale bearing indicia of drug residue before locating Blunt's "Boeing" bag. Thus, by the time officers located the "Boeing" bag, they had probable cause to believe they might find narcotics or weapons inside the vehicle, and so the warrantless search of that bag was justified. See Houghton, 526 U.S. at 302.

## II.

Any possible error in the district court's refusal to provide a cautionary instruction on witness immunity was harmless.

The failure to provide such an instruction can be reversible error if the "[witness's] testimony is 'important' to the case, i.e., the defendant's guilt rested almost entirely on the testimony of the [witness] and the other evidence linking the defendant to the criminal activity is weak." Guam v. Dela Rosa, 644 F.2d 1257, 1260 (9th Cir. 1980).

In this case, however, Wennig's testimony did not "suppl[y] the only strong evidence of [Blunt's] guilt," see United States v. Patterson, 648 F.2d 625, 631 (9th Cir. 1981). For example, Blunt inculpated himself when he

3

admitted that the "Boeing" bag, in which police discovered ammunition and a sidearm, belonged to him; it seems unlikely that the jury would have credited Blunt's story that someone else must have placed those items into the bag while Blunt wasn't watching.

Additionally, fellow passenger Cindy Donohoo testified that as she and Wennig loaded the car before departing to retrieve Blunt, she observed several items in the trunk—including the red blanket in which police later discovered the rifles—but she did not observe weapons. When the pair arrived at Blunt's residence, Donohoo saw Blunt approach the car carrying something heavy. Donohoo then heard the trunk open, after which she heard Blunt and Wennig rearranging its contents in order to get it to close. Donohoo's testimony strongly suggests that all of the firearms that police discovered in Wennig's trunk emanated from Blunt's residence.

Wennig's uncle, Danial Tapia, also testified that during a phone conversation with Wennig sometime before the Spokane trip, Wennig handed the phone to a "Robert," who asked whether Tapia would like to purchase a hunting rifle. Tapia recalled that the day before the Spokane trip, Wennig again called him about purchasing a rifle. Sergeant Michael Kittilstved testified that several calls were made from Blunt's phone to Tapia's phone the morning of the stop. This testimony all suggests that

4

Blunt and Wennig jointly possessed the weapons in a plot to sell them.

Finally, we find it implausible that the jury's guilty verdict "rested almost entirely on [Wennig's] testimony," see Dela Rosa, 644 F.2d at 1260, because Wennig was not a credible witness: Wennig's largely self-serving story was extensively discredited, both by other witnesses and during his own cross examination, a fact which the government acknowledged in its closing argument. Additionally, the jury had reason to distrust Wennig because it learned of an alleged immunity deal he received in exchange for his cooperation.[2] On the other hand, the jury had relatively little reason to discredit Donohoo's testimony, which included candid details about her own drug use and implicated both Blunt and her cousin, Wennig, in the crime.

**AFFIRMED.**

---

[2]We reserve judgment on whether, as Blunt argues, it was error for the district court not to provide Blunt's proffered jury instruction on the credibility of an immunized witness; as this discussion illustrates, any such error would have been harmless in this case. We raise the point only to note that where, as here, the jury was made aware of the agreement through testimony, such evidence would have further undermined Wennig's credibility.



***U.S. v. Blunt***, **No. 12-30097**
**Rawlinson, Circuit Judge, concurring:**

I concur in the result.