No. 93,419

STATE OF KANSAS, *Appellant*, v. KRISTINA M. GROSHONG, *Appellee*.

(135 P.3d 1186)

Opinion filed June 9, 2006.

*Nicholas J. Heiman*, assistant county attorney, argued the cause, and *Vernon E. Buck*, first assistant county attorney, *Marc Goodman*, county attorney, and *Phill Kline*, attorney general, were on the brief for appellant.

*Michael A. Sherman*, of Sherman & Dean, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J: Kristina M. Groshong was the passenger in a vehicle subject to a routine traffic stop. During the stop, an officer searched the purse Groshong left in the vehicle and found drugs and drug paraphernalia. The district court suppressed the evidence seized from Groshong's purse. On appeal, the Court of Appeals reversed the district court's suppression order. Groshong petitioned this court to review the Court of Appeals' decision.

## FACTS

While on routine patrol, Lyon County Sheriff's Deputy Corey Doudican observed a vehicle with an inoperative tail light. After stopping the vehicle, Deputy Doudican noted that there were three occupants and observed the driver and Groshong, the front-seat passenger, making hand movements as if they were passing things back and forth. The driver of the vehicle appeared nervous, dropping his insurance card twice before handing it to Deputy

Doudican. After identifying the driver, Deputy Doudican discovered an outstanding warrant from another county and arrested the driver.

While handcuffing the driver at the rear of the vehicle, Deputy Doudican observed Groshong making hand movements like she was pushing something under or pulling something out from under the front seat. Deputy Doudican then instructed Groshong and the other passenger to exit the vehicle and sit on the grass near the car. Groshong complied with Deputy Doudican's request, taking nothing with her and requesting nothing from inside the vehicle. Deputy Doudican did not handcuff either passenger or place either under arrest.

The driver refused Deputy Doudican's request to search the vehicle for contraband. Nevertheless, Deputy Doudican, who had his drug dog with him, advised the driver that he was going to have his drug dog conduct a sniff search of the vehicle. In preparation for the sniff search, Deputy Doudican conducted a safety check of the vehicle from the exterior using a flashlight to illuminate the interior and observed a small bag containing green, leafy vegetation like marijuana lying on the floor of the vehicle between the front seats. After retrieving the bag from the car, Deputy Doudican informed Groshong that he was going to search the rest of the vehicle.

At that point, approximately 3 to 5 minutes after she had exited the vehicle, Groshong requested her purse from inside the vehicle. Citing safety concerns, Deputy Doudican denied her request. Deputy Doudican found Groshong's purse in the front passenger area. Inside her purse, he found a small, peppermint tin containing green, leafy vegetation and a smoking pipe with white residue.

Groshong was arrested and charged with one count of possession of marijuana and one count of possession of drug paraphernalia. Groshong filed a motion to suppress the evidence found in her purse, claiming that the search violated her rights under the Fourth Amendment to the United States Constitution. Following an evidentiary hearing, the district court granted Groshong's motion.

The State appealed, and the Court of Appeals reversed the district court's decision. *State v. Groshong*, No. 93,419, unpublished

opinion filed October 14, 2005. Noting that Groshong voluntarily left her purse in the car when she exited from the vehicle, the Court of Appeals concluded that Groshong's request for her purse came after Deputy Doudican had probable cause to search the vehicle, giving him the legal right to search all packages and containers within the vehicle. Slip op. at 10. We granted Groshong's petition for review.

## ANALYSIS

When reviewing a motion to suppress, an appellate court examines the factual underpinnings of the district court's decision using a substantial competent evidence standard. The district court's ultimate determination regarding the suppression of evidence is a legal conclusion subject to an unlimited standard of review. When the material facts are not in dispute, the question regarding the suppression of evidence is solely a matter of law. *State v. Thomas,* 280 Kan. 526, 530, 124 P.3d 49 (2005).

The Fourth Amendment to the United States Constitution and §15 of the Kansas Constitution Bill of Rights preclude all unreasonable searches and seizures. *State v. Ramirez,* 278 Kan. 402, 404, 100 P.3d 94 (2004). Any warrantless search is considered unreasonable unless it falls within a recognized exception; Kansas recognizes the following eight exceptions to the rule that warrantless searches are unreasonable: consent; search incident to a lawful arrest; stop and frisk; probable cause to search accompanied by exigent circumstances; the emergency doctrine; inventory searches; plain view; and administrative searches of closely regulated businesses. 278 Kan. at 404-05. The State bears the burden of proving a lawfulness of a search and seizure. *State v. Boyd,* 275 Kan. 271, 273, 283, 64 P.3d 419 (2003).

Relying on *Wyoming v. Houghton,* 526 U.S. 295, 143 L. Ed. 2d 408, 119 S. Ct. 1297 (1999), the State argues that the search of Groshong's purse falls within the exception allowing officers to search when they have probable cause accompanied by exigent circumstances. In *Houghton,* a Wyoming Highway Patrol officer stopped a car for speeding and a faulty brake light. Houghton was one of the two front-seat passengers in the car. While the officer

was questioning the driver, he noticed that the driver had a hypodermic syringe in his front pocket. When the officer asked about the syringe, the driver candidly admitted using it to take drugs. At that point, back-up officers ordered both passengers to exit the vehicle and asked them for identification. Houghton gave the officers a false name and told them she did not have any identification. During the subsequent search of the vehicle, an officer found a purse on the back seat, and Houghton claimed it. The officer removed Houghton's driver's license from the purse and determined that Houghton had lied about her name. The officer also discovered drug paraphernalia and a syringe with 10 cc's of methamphetamine.

Houghton contested the search of her purse, claiming there was no probable cause to search her personal belongings inside the car. The *Houghton* Court, however, concluded that law enforcement officers can search a passenger's belongings inside a vehicle as long as they are capable of concealing the object of the search. 526 U.S. at 307. The *Houghton* Court relied on *United States v. Ross*, 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982), which held that when probable cause justifies the search of a vehicle, it justifies the search of every part of the vehicle including the contents that may conceal the object of the search. 526 U.S. at 300-01. Noting that "[p]assengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars," the *Houghton* Court refused to create an exception to the *Ross* rule that required officers to determine the ownership of each container inside a car before allowing the search of that container, when there was probable cause to search the car and the object of the search could be found in that container. 526 U.S. at 303.

Groshong, on the other hand, argues that the probable cause to search the car did not extend to her purse because the search of her purse was equivalent to searching her person and there was no probable cause to search her. Groshong relies on Justice Breyer's concurring opinion in *Houghton*, which recognized a potential distinction for purses as special containers that hold personal items people generally like to keep with them at all times. 526 U.S. at 308 (Breyer, J., concurring). Although there is mention that the

search of a purse involves an intrusion similar to the search of a person's body, Justice Breyer declined to conclude that the search of a purse automatically made a legal difference. Nevertheless, Justice Breyer acknowledged that if a purse were attached to its owner, like a billfold in a man's pocket, it could be considered a type of "outer clothing" subject to increased protection. Because Houghton's purse was separate from her, Justice Breyer concluded that the officer properly searched Houghton's purse. 526 U.S. at 308 (Breyer, J., concurring).

Relying on Justice Breyer's concurring opinion in *Houghton*, we recognized a heightened privacy interest in purses when they are attached to the owner. See *Boyd* 275 Kan. at 276-77, 282-83. In *Boyd*, officers conducting surveillance on a residence for drug activity observed a vehicle in front of the residence during the early morning hours. The officers followed the vehicle and, when the driver failed to signal a turn, they stopped the vehicle. Boyd was a passenger. After the driver consented to a search of the car, one of the officers asked Boyd to exit. Boyd attempted to take her purse with her but was ordered to leave her purse inside the vehicle. Boyd refused to consent to the search of her purse. During the search of the vehicle, an officer found a crack pipe in the center console ashtray. The officer then searched Boyd's purse, which was sitting on the front floorboard, and found crack cocaine.

Boyd sought to suppress the evidence found in her purse. The *Boyd* court distinguished *Houghton* by noting that Houghton voluntarily left her purse in the vehicle when she exited. 275 Kan. at 283. Based on this distinction, the *Boyd* court held that an officer cannot search a passenger's purse while searching a vehicle when the officer has ordered the owner of the purse to leave it in the vehicle. 275 Kan. at 283.

Groshong argues that this case is more analogous to *Boyd* than *Houghton* because she requested her purse from the vehicle before Deputy Doudican searched the vehicle. However, we find this case to be factually distinguishable from both *Boyd* and *Houghton*. Unlike Boyd, Groshong did not take her purse or attempt to take her purse when she exited the car. Likewise, Groshong did not willfully leave her purse in the car during the search like Houghton. This

case falls in the gap between *Boyd* and *Houghton*, raising an issue of first impression in Kansas.

To address the gap between *Boyd* and *Houghton*, we have considered cases from other jurisdictions. Like the *Boyd* court, appellate courts in Florida and Idaho make a distinction in their Fourth Amendment analysis when a passenger immediately asserts a privacy interest in a purse by taking or attempting to take it when exiting the vehicle. *State v. Tanner*, 915 So. 2d 762, 763-64 (Fla. Dist. App. 2005) (concluding that the search of a passenger's purse was unconstitutional because the officer ordered the passenger to leave her purse in the vehicle while a drug dog sniffed the vehicle); *State v. Newsom*, 132 Idaho 698, 700, 979 P.2d 100 (1998) (invalidating the search of the passenger's purse incident to the driver's arrest because the passenger did not voluntarily leave her purse in the vehicle during the search); *cf. State v. Roe*, 140 Idaho 176, 179, 183, 90 P.3d 926 (Ct. App. 2004) (allowing the search of defendant's shorts even though he attempted to take them with him when he exited the vehicle and distinguishing between shorts and a purse).

However, both Florida and Idaho have concluded that the search of the passenger's purse is valid if the passenger voluntarily leaves the purse in the car upon exiting but attempts to remove the purse before it can be searched along with the other contents of the vehicle. See, *e.g.*, *Hawley v. State*, 913 So. 2d 98, 101 (Fla. Dist. App. 2005); *State v. Holland*, 135 Idaho 159, 163, 15 P.3d 1167 (2000).

In *Hawley*, an officer observed a woman ducking down in the back seat of the vehicle parked outside a nightclub. The woman was alone in the car. The officer contacted the woman and asked for identification. When the woman retrieved her driver's license from her purse, the officer observed cannabis inside the woman's purse. The officer arrested the woman and had her sit on the ground outside the vehicle. Before the officer could search the car incident to the woman's arrest, the defendant, who had left her purse in the vehicle, returned from the club and demanded her purse from inside the vehicle. The officer denied Hawley's request and searched her purse. The *Hawley* court upheld the search of

Hawley's purse, noting that she had left the purse in the car and concluding that the officer had authority to search the vehicle before Hawley requested her purse from the car. 913 So. 2d at 101.

In *Holland*, the defendant was a passenger in a legally stopped vehicle. The driver of the vehicle was arrested on an outstanding warrant. The officer asked Holland to exit the vehicle and frisked her for weapons. While Holland was exiting or shortly thereafter, Holland asked for a jacket and her purse from inside the vehicle. The officer advised Holland that she could have them after he checked them for weapons. Inside a pencil box in Holland's purse, the officer found a small, transparent container with white powder. The *Holland* court upheld the search of Holland's purse as part of the search of the vehicle incident to the arrest of the driver, distinguishing *Newsom* on the grounds that Holland did not immediately take her purse with her when she exited. 135 Idaho at 163.

In his concurring opinion in *Houghton*, Justice Breyer warned against automatically distinguishing between a purse and other types of containers. 526 U.S. at 308, (Breyer, J. concurring). The Florida and Idaho courts have heeded Justice Breyer's warning. To avoid subjecting a passenger's purse to a search during the lawful search of a vehicle, a passenger in Florida and Idaho must immediately assert a privacy interest in the purse by taking it upon exiting the vehicle. See *Hawley*, 913 So. 2d at 100-01; *Holland*, 135 Idaho at 163.

We agree with the Florida and Idaho courts. Allowing the occupant of a vehicle to maintain possession of his or her purse upon exiting a vehicle is a limitation of the bright line rule set forth in *Ross* and *Houghton*. However, the limitation is clear, avoiding the *Houghton* Court's concerns that courts would have to consider such questions as "whether the officer should have believed a passenger's claim of ownership, whether he should have inferred ownership from various objective factors, whether he had probable cause to believe that the passenger was a confederate, or to believe that the driver might have introduced the contraband into the package with or without the passenger's knowledge." 526 U.S. at 305-06. We hold a law enforcement officer may search a passenger's purse left in the vehicle when the passenger exits, if the pas-

senger makes no effort to retrieve the purse before probable cause to search the vehicle develops. In such a case, the purse is treated the same as any other package or container in the vehicle that could hold or conceal the object of the search.

Groshong left her purse in the vehicle and did not immediately assert a privacy interest in it. Rather, she waited approximately 3 to 5 minutes until Deputy Doudican had established probable cause to search the vehicle and advised her of the impending search before she asserted her privacy interest in the purse. Based on these facts, we agree with the Court of Appeals. The trial court erroneously granted Groshong's motion to suppress.

The decision of the Court of Appeals is affirmed. The decision of the district court is reversed, and the matter is remanded for further proceedings.