(155 P.3d 724)

No. 96,035

STATE OF KANSAS, *Appellee*, v. MONTE J. THOMPSON, *Appellant*.

Opinion filed April 6, 2007.

*Chris O'Hara* and *Charles A. O'Hara*, of O'Hara, O'Hara & Tousley, of Wichita, for the appellant.

*James R. Watts*, assistant county attorney, and *Phill Kline*, attorney general, for the appellee.

Before MARQUARDT, P.J., PIERRON, J., and KNUDSON, S.J.

PIERRON, J.: Monte J. Thompson appeals from his conviction of possession of marijuana and possession of drug paraphernalia after the district court admitted evidence he claims the police obtained based on his involuntary consent to search his home. Thompson also claims constitutional reversible error occurred when the State solicited testimony that was prohibited by a pretrial motion to suppress.

On August 28, 2004, Officer Danny Strobbe was attempting to serve a notice to appear to a person at a home in Augusta, Kansas. No one answered the door. However, Strobbe noticed Thompson stick his head out of his front door across the street. Strobbe walked across the street to ask Thompson if he knew where his neighbor was.

While crossing the street, Strobbe saw several people through Thompson's front door who were inside the living room passing around what Strobbe believed was a marijuana joint. While approaching the front door, Strobbe smelled marijuana, an odor he has had experience with as a detective. Strobbe called for backup.

Officer Chris Jones arrived and also smelled marijuana. Both officers went to the front door and Strobbe knocked. Thompson answered the door, started to step outside, and then tried to shut the wooden door behind him. Strobbe told Thompson to leave the door open, that he could smell burned marijuana, and Thompson needed to stay outside and answer his questions. Thompson confirmed that he and his friends had been smoking marijuana and that the marijuana was in the living room next to the couch. Strobbe asked Thompson for his consent to search the house. Thompson refused. Thompson said he did not understand why the officers needed to search his house since he had already told them where

the marijuana was. He also told Strobbe that he did not want to go to jail.

While Strobbe was talking with Thompson, Jones entered the house and stood just inside the front door to watch the three people in the living room for "officer safety" reasons. Jones asked each person to identify themselves, and while in the house noticed the smell of burned marijuana. Casey Thompson, Thompson's daughter, told Jones that her license was in her room and asked permission to go get it. Jones went with her because the doorway toward the bedrooms was covered by a curtain. Jones saw a used marijuana pipe in Casey's bedroom. After identifying everyone, Jones stepped back out onto the porch to discuss the situation with Strobbe.

Strobbe told Jones that Thompson admitted having marijuana but refused to give them consent to search the house. Strobbe also told Jones that Thompson did not want to go to jail. Unsure of how to proceed, Jones contacted the on-call investigation officer. The investigation officer suggested that Jones explain Thompson's options to him and that if he was willing to be honest and cooperate, that the officers would not take him to jail that night.

Jones asked Thompson if he would be willing to talk with Jones in the patrol car. Thompson agreed and sat down in the front passenger seat. Jones asked Thompson why he did not want the police to search his house; Thompson responded that he did not want to go to jail. Jones promised Thompson that he would not arrest Thompson that night if he cooperated, but Jones did not make any promises about future prosecution. Jones also explained to Thompson that if Thompson refused consent, the officers would apply for a search warrant.

Jones asked Thompson for his consent to search the house when they first got into the patrol car and again after Thompson confirmed with Jones at least two times that Jones would not take him to jail if he cooperated. Thompson eventually consented.

Jones and Strobbe seized the marijuana that Thompson had told them about and several other items. The officers did not arrest Thompson that night. They did not at any time read him his *Miranda* rights. The State eventually filed charges against Thompson.

Before trial, Thompson moved to suppress the physical evidence and the statements he had made to the police. The district court adopted the facts included in Thompson's motion, clarifying only that there was insufficient evidence to determine whether the windows of the house were open, and that Strobbe had asked for consent once and Jones had asked for consent twice. The court found that the officers had interrogated Thompson without *Mirandizing* him and suppressed Thompson's statements. However, the court did not suppress the physical evidence because it found that Thompson had voluntarily consented to the officers' search of his house despite being in custody.

At trial, Thompson objected to the admission of each piece of physical evidence and to Strobbe's statement that Thompson told Strobbe he did not want to go to jail. A jury convicted Thompson of possession of marijuana and misdemeanor possession of drug paraphernalia.

Thompson argues his consent to the search of his home was coerced because the officers created a situation where no reasonable person would have believed he or she could refuse to give consent. Although the State maintains Thompson voluntarily consented to the officers' search, alternatively it argues that the evidence would have been discovered inevitably.

"In reviewing a district court's decision regarding suppression, this court reviews the factual underpinnings of the decision by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard with independent judgment. This court does not reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. [Citation omitted.]" *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006).

When the material facts to a district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006).

"The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights generally prohibit the warrantless entry of a person's home. [Citation omitted.]" *Porting*, 281 Kan. at 324. Both the federal and state constitutions pro-

vide that the privacy interest in a person's home requires special deference and is entitled to unique sensitivity. *United States v. Martinez-Fuerte*, 428 U.S. 543, 561, 565, 49 L. Ed. 2d 1116, 96 S. Ct. 3074 (1976); *State v. Platten*, 225 Kan. 764, 769, 594 P.2d 201 (1979); *State v. Blair*, 31 Kan. App. 2d 202, 206, 62 P.3d 661 (2002).

Moreover, searches conducted without a search warrant are per se unreasonable, subject to a few recognized exceptions. Kansas recognizes voluntary consent as an exception to the warrant requirement. *State v. Groshong*, 281 Kan. 1050, 1052, 135 P.3d 1186 (2006).

When the district court determines the State was permitted to conduct a search because it had consent to search, an appellate court reviews the holding for substantial competent evidence. The State must prove by a preponderance of the evidence that the consent was voluntarily, intelligently, and knowingly given. *State v. Jones*, 279 Kan. 71, 77, 106 P.3d 1 (2005). Consent is voluntary if it is the product of free and independent will. See *State v. Kermoade*, 33 Kan. App. 2d 573, 581, 105 P.3d 730, *rev. denied* 279 Kan. 1009 (2005). "[S]ubstantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citation omitted.]" *State v. Luna*, 271 Kan. 573, 575, 24 P.3d 125 (2001).

Here, the district court found Thompson's consent was voluntary primarily because the court found that sufficient probable cause existed to permit the officers to obtain a search warrant. Because the officers could have secured a warrant, telling Thompson they could apply for a warrant was not a threat and thus, not coercive.

Thompson does not claim that he was seized in violation of his Fourth Amendment rights. His only contention is that he did not voluntarily consent to the search of his home. Thompson relies on *Kermoade* to establish that his consent was coerced. Thompson claims his facts are similar because, as in *Kermoade*, the officers threatened that they would get a search warrant if Kermoade did not consent to the search. However, as both the district court and the State point out, *Kermoade* is factually distinguishable and does not support Thompson's arguments.

In *Kermoade*, police seized evidence of a marijuana farm after an unreliable informant told police that his neighbors were growing marijuana. Kermoade refused to consent to a search twice. The police told Kermoade that they would apply for a search warrant and would secure the house until they received the warrant. Although people would be allowed to leave, anyone who stayed would have to be in an officer's presence. Kermoade went inside to talk to her husband, Moyer.

While Kermoade was inside, the police claimed to have smelled fresh marijuana while standing on the porch. The officers entered Kermoade's house and yelled for Kermoade and Moyer to come to the front door. Kermoade, Moyer, and the officers sat in the living room to talk about their options. The officers did not threaten, yell, or tell Kermoade or Moyer that they had to consent. Kermoade and Moyer eventually consented to a search of their house and showed officers the marijuana farm in their basement. The district court suppressed the evidence, holding that the consent was coerced because of the officers' persistence, the lack of probable cause to justify seizing Kermoade or Moyer, and the officers' claim of authority that they were absolutely entitled to a search warrant.

A panel of the Court of Appeals affirmed the district court. The appellate court applied a clearly erroneous standard and noted that there was not an intervening break between the Fourth Amendment violation and the consent. 33 Kan. App. 2d at 581-82.

Here, there are two major differences. First, the police had probable cause to believe that a crime was being committed in Thompson's home. The district court specifically found that, unlike in *Kermoade*, the officers had sufficient probable cause to obtain a search warrant and were not on a fishing expedition.

The district court also noted that the police conducted their conversation with Thompson outside his home, rather than in his home as in *Kermoade*. Because the police provided Thompson with his legal options outside Thompson's home, and they had probable cause to secure a warrant, the court found that the officers' actions were not coercive. The court noted its decision would have been different if the police had not had probable cause, and explicitly

disapproved Jones entering the home without a justifiable legal basis.

The second major difference is that the police seized Kermoade in violation of her Fourth Amendment rights and there was not an intervening event or break in time to remove the taint of the illegal seizure. Here, the police did not illegally seize Thompson. The police may briefly detain an individual when they reasonably suspect that the person is committing or has committed a crime. K.S.A. 22-2402(1). Because probable cause is a higher standard than reasonable suspicion, the officers could detain Thompson after he stepped out of his house to talk with them, and question him about the illegal activity going on in his house. See *State v. Riddle*, 246 Kan. 277, 281, 788 P.2d 266 (1990) (upholding warrantless arrest where police arrested the defendant when he stepped out of his house and onto the porch at the officer's request; defendant no longer had a reasonable expectation of privacy). Therefore, Thompson was not illegally seized, and the State needed only to prove that Thompson voluntarily consented to the search.

Although there was not an illegal seizure here, car consent search cases identify factors the courts may use to determine whether Thompson's consent was coerced. See *State v. Reason*, 263 Kan. 405, 409, 415-16, 951 P.2d 538 (1997) (coercion factors include the number of officers and whether the officers demonstrated authority, used forceful language, or showed their weapons); *State v. Ninci*, 262 Kan. 21, 32, 936 P.2d 1364 (1997) (factors indicating voluntariness were officer behavior, defendant's indication of intent to consent, defendant's education, intoxication); see also *Schneckloth v. Bustamonte*, 412 U.S. 218, 233-34, 248-49, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973) (voluntariness to be determined from all the circumstances; burden is on the State).

Repeatedly asking for consent also may be coercive depending on the number of requests in a specific time period. See *State v. Garcia*, 250 Kan. 310, 317-19, 827 P.2d 727 (1992). In *Garcia*, the State obtained Garcia's consent to search his car after they had illegally detained him beyond the time necessary to issue a citation and without any articulable suspicion of criminal activity. Based on

the totality of the circumstances, the Supreme Court upheld the district court's finding that Garcia's consent was not voluntary. 250 Kan. at 316, 319.

Here, there is no indication of how long the police interrogated Thompson before he consented to the search. Unlike *Garcia* or *Kermoade*, the police were not on a fishing expedition, but investigating a crime they had witnessed. Additionally, the State is not required to prove an intervening break between an illegal seizure and the consent because Thompson was not illegally detained. Finally, even though Thompson consented to the search while sitting in the patrol car, the fact consent is given while in custody is insufficient by itself to demonstrate coercion. See *United States v. Watson*, 423 U.S. 411, 424, 46 L. Ed. 2d 598, 96 S. Ct. 820 (1976).

The facts do not necessarily demonstrate that the officers created an oppressive environment. The officers did not brandish their weapons, raise their voices, or threaten to harm Thompson. Finally, the officers did not claim they had a right to enter and search his home without his consent.

Conversely, there are facts that could cause a reasonable person to believe that he or she did not have the authority to refuse the officer's request. First, the negative implication of Jones promising not to take Thompson to jail if he cooperated was that if he refused and the police got a search warrant, Thompson was going to jail.

Additionally, Jones entered Thompson's house without a warrant or permission for the reasons of officer safety. Yet, there is no evidence that the people in the house posed a threat to the officers, nor is there any evidence that the people in the house attempted to destroy evidence. Also, Jones' request that Thompson talk to him inside the patrol car seems unusual because although Jones claimed it was for Thompson's privacy, Jones did not recall seeing any neighbors gathering or watching from their porches. Finally, Thompson refused to give consent at least twice, maybe three times, before finally consenting to the search.

As has been said many times, the touchstone of our analysis under the Fourth Amendment is always the reasonableness, under all the circumstances, of the particular governmental invasion of a citizen's personal security. The reasonableness depends on a bal-

ance between the public interest and the individual's right to personal security free from arbitrary interference by law officers. See *State v. Jones*, 27 Kan. App. 2d 476, 482, 5 P.3d 1012 (2000), *aff'd* 270 Kan. 526, 17 P.3d 359 (2001) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330 [1977]).

Where only a minor crime is involved and there are no emergencies requiring immediate police entry, the Fourth Amendment protections of homes should be strictly enforced.

Here, there was only a minor crime involved that did not require immediate police entry into the home, and Thompson had two or three times denied permission for warrantless entry, the consent obtained by the police through continued pressure on Thompson was invalid. See *State v. Jones*, 24 Kan. App. 2d 405, 947 P.2d 1030 (1997). Therefore the search was in violation of the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights.

However, we believe the evidence can be admitted under the inevitable discovery doctrine. Evidence obtained in violation of the defendant's constitutional rights may be admitted if the State can prove by a preponderance of evidence an alternative legal basis for the admission of the evidence. See *State v. Brown*, 245 Kan. 604, 612, 783 P.2d 1278 (1989) (citing *Nix v. Williams*, 467 U.S. 431, 81 L. Ed. 2d 377, 104 S. Ct. 2501 [1984]).

In *Brown*, the Kansas Supreme Court upheld the admission of evidence obtained without a warrant. The court held that Brown's consent was not coerced when officers gave him the option of consenting and being searched at that time or waiting for a warrant, because the officers had sufficient probable cause to obtain the warrant. *Brown*, 245 Kan. at 613. The court appears to have upheld the admission of the evidence on *both* grounds. Because there was sufficient probable cause for the police to secure a warrant and they were in the process of obtaining the warrant, the evidence discovered on Brown would have inevitably been discovered. Additionally, because the police had sufficient probable cause to obtain a warrant, they did not impermissibly threaten him by stating they were applying for a warrant. 245 Kan. at 612-13.

The essential facts in the instant case are similar and require the same result as *Brown* as regards to inevitable discovery. There was enough probable cause to obtain a search warrant which would have lead to the inevitable discovery of the evidence.

Thompson also argues the district court committed reversible constitutional error by admitting Strobbe's statement, over Thompson's objection, that Thompson refused consent and told Strobbe he did not want to go to jail that night. The State denies that the statement was within the pretrial suppression order and even if it was, claims the error was harmless due to the overwhelming evidence of Thompson's guilt.

> " 'An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that it was harmless beyond a reasonable doubt. Thus, before an appellate court may declare the error harmless, it must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial.' [Citation omitted.]" *State v. Brown*, 280 Kan. 65, 77, 118 P.3d 1273 (2005).

Whether a trial error is harmless or prejudicial requires the court to scrutinize the trial record as a whole and consider the claimed error in light of the entire trial, not as an isolated incident. *State v. Abu-Fakher*, 274 Kan. 584, 613, 56 P.3d 166 (2002). When there is direct and overwhelming evidence of the defendant's guilt, such that the admission of erroneously admitted evidence would not have affected the outcome of the trial, then the error is harmless. *State v. Hebert*, 277 Kan. 61, 96, 82 P.3d 470 (2004).

Here, the district court suppressed "all incriminating statements of admission and location of the drugs made by the defendant following his coming outside his home." The statement, "I don't want to go to jail" could be interpreted as being inculpatory, if the jury inferred that Thompson made the statement because he knew there was marijuana in his house. Thus, the statement was within the order and the district court should have sustained the objection and struck the statement from the record.

But in light of the other evidence, the statement was harmless error. Both officers testified to smelling marijuana when approaching the home. Strobbe also testified to seeing people inside passing around a hand-rolled cigarette, which he believed to be a joint.

Thompson owned the home. Upon searching the home, the officers seized rolling papers that were on top of a skydiving certificate with Thompson's name on it. The certificate was sitting on top of a trunk which, Strobbe testified, was near where he had seen Thompson sitting. The officers did not find any loose tobacco but did find marijuana. Additionally, the officers seized nine hand-rolled cigarettes, six baggies of green botanical substance, forceps, rolling papers, and a gold pipe. Thompson did not present any evidence.

Considering all of the evidence was found in Thompson's home and most of it was found near where Strobbe testified Thompson had been sitting, it is direct and overwhelming evidence that Thompson possessed both the marijuana and drug paraphernalia. Although neither officer testified that Thompson was holding any of the illegal items, there were facts that established constructive possession. Jury instruction number 8 correctly defined constructive possession and the factors the jury should consider for finding constructive possession. The district court did not err.

Affirmed.