NOT DESIGNATED FOR PUBLICATION

No. 121,853

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RONALD A. ROBERTS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Opinion filed January 28, 2022. Reversed and remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Brian Deiter, legal intern, Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., GREEN and HURST, JJ.

PER CURIAM: A jury convicted Ronald A. Roberts of possession of methamphetamine with intent to distribute, possession of drug paraphernalia, and possession of marijuana, and the district court sentenced him to 123 months' imprisonment. Roberts appeals, arguing that the district court erred by admitting evidence of his prior conviction and by denying his motion to suppress evidence. This court agrees with Roberts in part. The district court erred when it admitted evidence of Roberts' prior

1

convictions when his intent was not in dispute. Thus, this court reverses all three of Roberts' convictions and remands the case for a new trial.

FACTUAL AND PROCEDURAL BACKGROUND

Shortly after midnight on March 3, 2018, Bryan Kennedy was driving Roberts to a friend's house in Lawrence, Kansas, when Kennedy was stopped for driving through a flashing red light and almost hitting another car. During the stop, Deputy Charlie Cooper of the Douglas County Sherriff's Office smelled the odor of marijuana from the truck and noticed what appeared to be marijuana shake on Kennedy's clothing—who was acting nervous. Cooper ordered Kennedy out of the truck and saw a glass pipe stuffed into the side of the driver's seat. Cooper also asked Roberts, who was the only passenger, to get out of the truck, and searched Roberts. Roberts told the officers he had some clothes in a suitcase in the truck bed. The officers asked Kennedy what belonged to Roberts, and Kennedy said the suitcase in the back of the truck was Roberts'. Later, Roberts told officers the suitcase did not belong to him but that he only owned the two bags inside the suitcase.

Officer Cooper told Roberts he was free to leave at any time, making it clear he was not under arrest, but told him he could not take anything from the truck until the investigation ended. Roberts would not leave without his property, so officers placed him in the back seat of a patrol vehicle until the completion of the investigation for officer safety purposes. While Roberts sat in the back of the patrol car, officers performed field sobriety tests on Kennedy, which he failed, and then Officer Cooper searched the truck and its contents. Officers located a suitcase in the bed of the truck which contained a prescription bottle with Roberts' name on it in the outside pocket of the suitcase. Officers found multiple bags inside the suitcase, including a black backpack with clothes, a prescription bottle with Roberts' name on the label, a bag with electronics in it, and a small black zipper pouch. Inside the zipper pouch, Officer Cooper found counterfeit $20

2

bills, several small plastic baggies, a substance later identified as methamphetamine, syringes, and a scale.

Officers did not arrest Roberts at that time and released him from the scene but did not allow him to take any property from the vehicle. Ten months later, the State filed its initial charges against Roberts and eventually charged him with possession of methamphetamine with intent to distribute, possession of drug paraphernalia, and possession of marijuana. Before trial, Roberts moved to suppress the evidence obtained from the search of the suitcase, which the district court denied. The State sought to admit evidence of Roberts' prior conviction for distribution of methamphetamine, claiming such evidence went to Roberts' intent. Over Roberts' objection, the district court allowed the admission of Roberts' prior conviction based on the court's determination that Roberts' intent to possess and distribute were at issue in the trial.

A jury found Roberts guilty on all charges and he appeals.

DISCUSSION

On appeal, Roberts argues the district court erred when it admitted his prior conviction for distribution of methamphetamine. The State counters, asserting that Roberts' rejection of a plea offer constituted a claim of innocence sufficient to put his intent at issue. Roberts also argues the district court erred when it did not suppress the evidence obtained from the officer's search of the suitcase in Kennedy's truck bed, claiming no exception to the warrant requirement applied to the search.

I.    *The District Court Erred by Admitting Evidence of Roberts' Prior Conviction*

Roberts asserts that the district court erred when it admitted evidence of his prior conviction because he never made a claim of innocence or had an innocent explanation

3

for the drugs in the suitcase—so he never placed his intent at issue. In opposition, the State argues first that Roberts failed to lodge a contemporaneous objection at trial to preserve this issue for appeal. Alternatively, the State argues that Roberts disputed his intent at trial because he told the officers at the scene only some items in the suitcase belonged to him and he refused a plea offer—allowing admission of his prior conviction under K.S.A. 2020 Supp. 60-455(b).

A. *Roberts Sufficiently Preserved His Claim*

This court does not generally entertain claims not properly preserved for its consideration. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020); see also K.S.A. 2020 Supp. 60-404 (requiring a timely objection that clearly explains its grounds). Before trial, the State moved to admit Roberts' prior conviction for distribution of methamphetamine to prove his intent in this case. Roberts opposed the motion—but the district court granted its admission over his objection. Then again, after voir dire, the prosecutor recognized that Roberts had "a continuing objection to that evidence being admitted, but I don't think he objects to the stipulation as created." Counsel for Roberts agreed, and the court acknowledged Roberts' objections and stated that its ruling to admit the evidence "stands over any objection." Defense counsel then explained that "I do not anticipate . . . renewing my objections during the State's opening, but obviously I will make the objection when I sense that the evidence is about to be presented."

Then during the close of the State's case, the State read the agreed stipulation regarding Roberts' prior conviction. The State explained to the jury that "[t]he following facts have been agreed to by the parties and are to be considered by you to be true, and *I will recognize a continuing objection from defense*. One, the defendant was convicted on October 15th, 2018, in Douglas County Case 18-CR-945, of distributing methamphetamine." (Emphasis added.) Roberts did not object when the State read the stipulation and noted his continuing objection. However, Roberts again renewed his

4

objection when the parties discussed the proposed jury instructions. At that time, the court asked Roberts' counsel if he had "any objection" to the jury instruction "other than, of course, you had your original objection?" Defense counsel stated he had "[n]o additional objections." The court demonstrated its understanding by stating "[a]nd when I say original objection, I mean to the prior bad act being admitted." Roberts' counsel explained to the court that the prior conviction evidence should ". . . only apply in a circumstance where ownership or control is not at issue. Otherwise, it's becoming essentially propensity." The district court overruled all the defense objections to the admission of Roberts' prior conviction.

At the conclusion of its case, the State read the previously objected-to and approved stipulation to the jury and stated ". . . and I will recognize a continuing objection from defense." Roberts did not object at that time. The State seems to argue the defense was required to double object at the time of the stipulation—even though the State already contemporaneously noted Roberts' continuing objection for the record. It is unnecessary for defense counsel to object after the State already noted the continuing objection. Roberts' actions through numerous objections and the State's inclusion of the defense's continuing objection sufficiently preserved the issue for review. See *State v. Randle*, 311 Kan. 468, 480, 462 P.3d 624 (2020) (holding objection preserved when defense counsel misspoke about specific grounds of objection, but district court knew issue of video and had opportunity to rule on it).

B. *Standard of Review for Admission of Prior Conviction Evidence*

Generally, evidence of a person's prior crimes is inadmissible as propensity or likelihood evidence—but can sometimes be used to prove intent. K.S.A. 2020 Supp. 60-455(a). "[E]vidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong . . ." but can be admissible "when relevant to prove some other material fact

5

including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2020 Supp. 60-455(a)-(b). Courts conduct a three-step analysis to determine the admissibility of prior bad acts evidence. *State v. Brazzle*, 311 Kan. 754, 758-59, 466 P.3d 1195 (2020).

In the first step, the court must determine whether the fact sought to be supported by the prior bad act evidence is material by considering whether the "'fact has some real bearing in the case.'" 311 Kan. at 758. In the second step, the court "'must decide whether the material fact is disputed, and, if so, whether the evidence at issue is relevant to proving the disputed material fact. In doing so, the trial court considers if the evidence has any tendency in reason to prove the disputed material fact.'" 311 Kan. at 758. The relevancy prong requires two assessments:  first, the probative value of the evidence and second, whether that evidence is being admitted to prove a material fact. Finally, in the third step, the district court determines whether the risk of undue prejudice substantially outweighs the evidence's probative value. 311 Kan. at 758-59. If the evidence satisfies all three steps, it is admissible, but the district court must provide the jury with a limiting instruction "'telling the jury the specific purpose for which the evidence has been admitted (and reminding them that it may only be considered for that purpose).'" 311 Kan. at 759.

When, as here, the defendant claims the district court erred in the application of the law to the first or second step—this court reviews those portions of the district court's decision under the de novo legal standard. See *State v. Boggs*, 287 Kan. 298, 307-08, 197 P.3d 441 (2008). De novo review requires this court to review the matter anew, without deference to the district court's conclusions. *Exchange State Bank v. Kansas Bankers Surety Co.*, 39 Kan. App. 2d 232, 237, 177 P.3d 1284 (Kan. App. 2008). Contrarily, this court reviews a dispute under the third step—whether the prejudicial power of the evidence admitted outweighed its probative value—under an abuse of discretion standard. *Boggs*, 287 Kan. at 308.

6

C. *Roberts Did Not Dispute a Material Fact*

The district court admitted evidence of Roberts' prior criminal history to prove his intent in the present case. Assuming for purposes of this analysis that the district court correctly determined Roberts' intent was a material fact to the case—this court must then determine if Roberts disputed that material fact. See *Brazzle*, 311 Kan. at 758. The "crucial distinction" in admitting prior crimes under K.S.A. 2020 Supp. 60-455 to prove intent "'is not whether the crime is a specific or general intent crime but whether the defendant has claimed that [their] acts were innocent.'" *Boggs*, 287 Kan. at 314. When the possession of illegal drugs is susceptible to both an innocent and a criminal interpretation, then the intent with which the defendant committed the act "becomes the critical element in determining its character." 287 Kan. at 314. "However, when a defendant does not assert that [their] actions were innocent but rather presents some other defense, there is no reason to admit evidence of other crimes or civil wrongs to prove intent." 287 Kan. at 314. When a defendant "wholly denies" possessing drugs, it is erroneous to admit evidence of prior bad acts. *State v. Wells*, 289 Kan. 1219, 1231, 221 P.3d 561 (2009).

Here, there are multiple potential criminal intent issues—intent to distribute methamphetamine, intent to possess marijuana, and intent to possess drug paraphernalia. All three charges require the State to demonstrate Roberts did in fact possess the drugs or paraphernalia. See K.S.A. 2017 Supp. 21-5705; K.S.A 2017 Supp. 21-5706; K.S.A. 2017 Supp. 21-5709. A similar issue arose in *Boggs*, when the district court admitted evidence of Boggs' prior bad acts after the State charged him with possession of marijuana, but Boggs denied possessing the drugs. The Kansas Supreme Court noted that "in all cases where this court has held such evidence to be admissible on these bases, the question of the defendant's intent, knowledge, or claim of mistake or accident was a disputed material fact in issue." 287 Kan. at 311. Our Supreme Court reviewed these prior cases and found all cases in which evidence of prior bad acts was admitted to prove intent involved

attempts by defendants to provide an innocent explanation for their possession of drugs—not a dispute over possession. 287 Kan. at 314-15.

There is a distinction between arguing a lack of possession versus a lack of intent to possess. On one hand, the defendant admits to possession but alleges a lack of intent to commit the crime. On the other hand, the defendant denies the act of possession entirely and never addresses the intent. This court must determine whether Roberts' intent was in dispute at trial. *State v. Brown*, 44 Kan. App. 2d 344, 351, 236 P.3d 551 (2010). In *Brown*, the defendant was charged with aggravated burglary, burglary, and theft of property. A panel of this court held the defendant's prior conviction for attempted burglary was inadmissible because in the case before the court the defendant denied entering the victim's residence for any reason. Even though the defendant's intent to commit a theft while inside the residence was a material fact to the charge—Brown did not dispute that material fact when he denied even being in the residence. Moreover, Brown's not guilty plea was insufficient to place his intent in dispute and could not trigger an exception under K.S.A. 60-455. 44 Kan. App. 2d at 352.

Here, Roberts did not testify, and defense counsel did not address or dispute the intent element of either the distribution or possession charges in his cross-examinations or closing argument. Roberts never presented a defense denying his intent to possess drugs or paraphernalia, nor did he provide an innocent explanation for his possession—because he denied possession.

The State argued in its motion to permit evidence of prior bad acts that Roberts put his intent in dispute when he "denied ownership of the bags containing the controlled substances" while at the scene and when he "stated on the record that he did nothing wrong." The State's argument misstates Roberts' statement at the suppression hearing when he rejected the State's plea offer and said, "Um, I think that justice will show that I didn't—you know, if I'm not guilty I shouldn't be convicted, so I don't believe I should

8

agree to something that I did not do, so . . . ." Roberts did not put his intent at issue by rejecting the plea offer because he was "not guilty." Rejecting the plea offer did not put Roberts' intent in dispute. See *Brown*, 44 Kan. App. 2d at 352 ("defendant is required to assert an innocent explanation for charged conduct before intent will be considered a disputed material issue"). Allowing the State to admit prior bad acts every time a defendant rejects a plea offer would permit the exception in K.S.A. 2020 Supp. 60-455(b) to swallow the general prohibition against admitting prior bad acts evidence in K.S.A. 2020 Supp. 60-455(a).

The State also alleges that Roberts put his intent at issue by denying owning the suitcase while still at the scene of the vehicle stop. However, Roberts' statements are not as portrayed by the State, nor are they synonymous to those in *Brazzle* as the State contends. Roberts first said the suitcase was his, but then told Officer Cooper his possessions were in a couple of bags inside the suitcase. Officer Cooper never confronted Roberts with the fact that she found illegal substances in the suitcase. There is no evidence Roberts was aware Officer Cooper searched the suitcase and found drugs in the zipper pouch inside. Officer Cooper never asked Roberts if the contraband belonged to him—so his statement cannot be said to be an explanation or defense to such question. Roberts was not told the officers found contraband, and he was simply requesting that Officer Cooper give him his possessions. It cannot be assumed that his answer was made with the intent to provide an innocent explanation for the drugs that the officers had not told him they found. Rather, Roberts' response clarified which possessions within the suitcase were his and which possessions he sought to take with him when he left the scene of the traffic stop.

The parties dispute the meaning and applicability of *Brazzle* to Roberts' appeal. The State uses *Brazzle* to distinguish *Boggs*' applicability—arguing *Boggs* is inapplicable because it was a simple possession case, not possession with intent to distribute like *Brazzle*. The State's argument does not negate the holding of *Boggs* nor equate *Brazzle* to

9

this case, particularly when this case also involves a charge of simple possession as in *Boggs*. While *Brazzle* involved a charge of possession with the intent to distribute—it is readily distinguishable from this case.

Brazzle was convicted of various drug crimes, including possession with intent to distribute methamphetamine, possession of drug paraphernalia, criminal use of a weapon, and unlawful possession of a controlled substance. On appeal, Brazzle argued that the district court erred in admitting K.S.A. 2020 Supp. 60-455 evidence of his prior methamphetamine sales. Officers were surveilling a hotel due to an uptick in drug use and distribution in the area when they observed a car, driven by Brazzle, go to the hotel and leave about 10 to 15 minutes later where he committed a traffic infraction. When officers stopped Brazzle for the traffic infraction he was the only occupant. Officers ultimately found prescription pills, drug paraphernalia, plastic baggies containing 3.4 and 5.7 grams of crystal-like substance later determined to be methamphetamine, small plastic baggies, and money inside Brazzle's car. The district court allowed the State to introduce evidence that Brazzle previously sold methamphetamine to an undercover detective at the same hotel on two occasions for the purpose of demonstrating Brazzle's intent to distribute the drugs found in his car. At trial, Brazzle requested the jury instruction for his distribution charge include the lesser offense of possession.

The Kansas Supreme Court determined that Brazzle's attorney put the issue of Brazzle's intent to distribute in dispute at trial in at least three ways. First, Brazzle's attorney "acknowledged before trial that 'obviously the intent or possession is the big issue in this case.'" *Brazzle*, 311 Kan. at 760. Second, the attorney requested the lesser included charge of simple possession, and third, during closing the attorney "argued baggies alone were not enough to show that someone intended to distribute." *Brazzle*, 311 Kan. at 761. The Supreme Court acknowledged that Brazzle's arguments regarding his intent were subtle, but "his attorney clearly placed in issue the question of whether

10

Brazzle was guilty of 'simple' possession or possession with intent to distribute." 311 Kan. at 762.

Unlike Brazzle, Roberts' attorney did not put Roberts' intent at issue in the trial. Roberts presented no evidence. Unlike Brazzle, Roberts did not request the lesser included charge of simple possession—that was done on the State's own initiative. Additionally, in his closing, Roberts' attorney repeatedly discussed the issue of possession and argued the State failed to prove possession. He did not make any arguments regarding intent, other than to say the prior bad acts evidence could not be used to show propensity—but only intent. He did not imply that Roberts conceded possession or provide an "innocent" excuse for possession—but rather claimed the State failed to show the drugs belonged to Roberts for several reasons. Unlike *Brazzle*, Roberts was not driving the vehicle, did not own the vehicle, was not alone in the vehicle, and the drugs were not found within Roberts' reach or under his physical control. Most of the facts demonstrating possession in *Brazzle* were not present in this case. Additionally, the driver of the vehicle in this case admitted to using, that same day, the type of drugs found in his vehicle.

The State contends that Roberts himself put intent at issue when he told Officer Cooper his belongings were in the truck bed inside some bags in the suitcase, and "changed his story to say that only some of the [suitcase's] contents belonged to him." The State's summary of Robert's statements oversimplifies the exchange:

> Officer Cooper: "Tell me Roberts what in the vehicle is yours, cause I already got [Kennedy's] story of what's yours and what isn't yours."
> Roberts: "That bag—the skinny bag—that has, uh, some laptops and things."
> Officer Cooper: "Ok, where's that bag at?"
> Roberts: "It's in the truck [inaudible] and I had some clothes [inaudible]."
> Officer Cooper: "The suitcase in the back?"
> Roberts: [inaudible]

11

Officer Cooper: "You just got picked up though, right?"

Roberts: "He put stuff in there while I was in the house doing stuff."

Roberts did not tell Officer Cooper the entire suitcase in question belonged to him—but gave information about locations where he had belongings.

None of Roberts' statements regarding the suitcase are in response to questions regarding the contraband. Nothing about Roberts' statements regarding his belongings inside the suitcase puts his intent to possess or distribute narcotics or paraphernalia at issue when he was never notified of the presence of narcotics in the suitcase. The State's case hinges on the presumption that Roberts knew about the contraband in the suitcase, which might be true—but was up to the State to prove and Roberts' statements about his belongings and the suitcase cannot be assigned that meaning.

Roberts never gave an innocent explanation for the drugs or paraphernalia in the suitcase, and simply denied possession. Therefore, his intent to possess or distribute those drugs was not in dispute. See *State v. Rosa*, 304 Kan. 429, 436, 371 P.3d 915 (2016) (explaining that a defendant's prior drug connection is inadmissible when the defendant disputes the factual basis of the State's claims rather than provides an innocent explanation). Roberts presented no innocent explanation, but denied possessing the drugs altogether. Therefore, Roberts' prior conviction for distributing methamphetamine was not material to proving his intent in the present case. See *State v. Preston*, 294 Kan. 27, 35, 272 P.3d 1275 (2012); *Boggs*, 287 Kan. at 315; *State v. Dotson*, 256 Kan. 406, 413, 886 P.2d 356 (1994).

Once a court determines the parties have disputed a material fact, it must then determine whether the prior bad acts evidence "is relevant to proving the disputed material fact." *Brazzle*, 311 Kan. at 758. In *Brazzle*, the court explained that "other crimes evidence may not always be material to prove an intent to distribute," even if the parties

put the issue in dispute. 311 Kan. at 762. Evidence of prior bad acts is more likely material, and evidence thus admissible, if the prior bad act was similar to the presently charged crime. 311 Kan. at 762. Because this court finds that Roberts' intent was not in dispute—it will not proceed further to determine whether the facts here sufficiently demonstrate materiality of the prior bad acts, but provides the above explanation of the standard.

## II.     *The District Court's Error Was Not Harmless*

Although this court has determined that Roberts' prior conviction was admitted in error, this court must still determine whether that error was harmless. *Boggs*, 287 Kan. at 318. To find a nonconstitutional error was harmless, this court must be persuaded that there is no reasonable probability the error affected the outcome of the trial. *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011); K.S.A. 2020 Supp. 60-261. The party benefitting from the error—the State in this case—has the burden to show the error was harmless. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012). The *Boggs* courted explained that there are three types of prejudice that can flow from the erroneous admission of a prior conviction:

> "First, a jury might well exaggerate the value of other wrongful acts as evidence proving that because the defendant has committed a similar wrongful act before, it might properly be inferred that [they] committed this one. Second, the jury might conclude that the defendant deserves punishment because [they are] a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Third, the jury might conclude that because the defendant is a criminal, the evidence put in on [their] behalf should not be believed." 287 Kan. 298, Syl. ¶ 2.

Determining whether an error in the admission of prior bad acts evidence resulted in harmless error requires the court to do "some weighing of the evidence presented against

13

the court's confidence that the verdict is consistent with substantial justice." *Boggs*, 287 Kan. at 319.

At trial, the State included Roberts' prior conviction for distribution of methamphetamine in its opening statement, presented it as a stipulation at the end of its case, discussed it in its closing statement, and included it as a factor in its jury instructions. The State clearly relied on Roberts' prior conviction—but for what? Because Roberts never put his intent to possess drugs or paraphernalia in dispute—it is reasonable to assume the jury might have used Roberts' prior bad acts evidence to prove something other than intent, such as propensity. Other than his prior conviction, the State relied on evidence from Officer Cooper, a forensic scientist who testified that the substance in the suitcase was in fact methamphetamine, and Sergeant O'Hare who was at the scene but also testified regarding his experience with common drug distribution practices. There was no testimony from Kennedy or anyone else identifying the owner of the suitcase. Officer Cooper provided circumstantial evidence, such as a lack of items labeled with Kennedy's name, that could demonstrate the suitcase did not belong to Kennedy. There was also circumstantial evidence that the suitcase did not belong to Roberts, such as its location, Roberts' contemporaneous statements at the scene, Kennedy's admission to recent drug use, and Kennedy's description of the needles used for his own drug use matching those found in the suitcase.

This court cannot discount "the very real possibility" that the prior conviction swayed the jury. See *Boggs*, 287 Kan. at 319. Given the other evidence, the weight placed on the prior conviction by the State, and the lack of dispute regarding intent—it is likely the jury relied on that prior conviction in its decision. This type of prior conviction evidence, particularly when not offered to demonstrate intent, simply goes to the defendant's propensity to commit the crime. See e.g., *State v. Everett*, 296 Kan. 1039, 1047, 297 P.3d 292 (2013).

14

Additionally, the limiting jury instruction does not save this error from its potentially harmful effect because the jury instruction lacked an anchor to the case and in fact could have created confusion. The lack of disputed evidence regarding intent likely left the standard limiting instruction—that Roberts' prior conviction "may be considered solely as evidence of the defendant's intent with regard to the present case"— meaningless. When the trial lacks dispute about actual intent to possess or distribute, and the true dispute rests on whether the defendant actually possessed the contraband, the limiting instruction does little more than add confusion. See *Everett*, 296 Kan. at 1050. As such, this court finds the erroneous admission of Roberts' prior conviction was not harmless. Considering this error impacted all three of Roberts' charges at trial, which relied on similar evidence, all three of his convictions are reversed and this case is remanded for a new trial on all three charges.

III.     *The District Court Properly Denied Roberts' Motion to Suppress*

Finally, Roberts asserts the district court erred when it did not suppress the evidence obtained from Officer Cooper's search of the suitcase in the truck bed. Roberts states that after he was told he could leave, he asked to get his property from the truck, but Officer Cooper refused to allow him access to his belongings until she completed her investigation. Roberts argues that, when he asked to retrieve his property, Officer Cooper did not have probable cause to search the truck and the suitcase for drugs. The State asserts that Officer Cooper had probable cause shortly after making the stop—even if Officer Cooper said she did not believe probable cause existed yet—because of the odor of marijuana, the marijuana shake on the driver, and the glass smoking pipe with marijuana residue inside the truck.

This court reviews a district court's denial of a motion to suppress in two parts— first it reviews the factual findings to determine whether they are supported by substantial competent evidence, and then it reviews the ultimate legal conclusion de novo. When the

facts supporting the district court's decision are not disputed, the ultimate question of whether to suppress is a legal question subject to de novo review. The State has the burden to establish the lawfulness of a warrantless search and seizure. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

Warrantless searches are presumptively unreasonable under the Fourth Amendment, and "'the ultimate touchstone of the Fourth Amendment is "reasonableness."'" *State v. Torres*, 308 Kan. 476, 481, 421 P.3d 733 (2018) (quoting *Riley v California*, 573 U.S. 373, 381-82, 134 S. Ct. 2473, 189 L. Ed. 2d 430 [2014]). Generally, such reasonableness requires officers to obtain a warrant before performing a search. A warrantless search is reasonable only if it falls into one of the exceptions to the warrant requirement—and the State carries the burden to justify a warrantless search. 308 Kan. at 481.

Law enforcement officers can conduct a warrantless search of a vehicle incident to arrest of an occupant when it is reasonable to believe evidence relevant to the crime of the arrest might be found in the vehicle to preserve evidence. *Torres*, 308 Kan. at 483. In some cases, the offense of the arrest can supply the basis for searching the vehicle and any containers found within. *Arizona v. Gant*, 556 U.S. 332, 343, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). This automobile exception permits warrantless searches when an exigent circumstance exists and the officer has probable cause to believe evidence of a crime is located within the vehicle or its contents. *Torres*, 308 Kan. at 484. A vehicle's mobility fulfills the exigent circumstances requirement under the Fourth Amendment, permitting a warrantless search of a vehicle based solely on probable cause. *State v. Howard*, 305 Kan. 984, 990, 389 P.3d 1280 (2017).

Probable cause to search a vehicle exists "when the totality of the circumstances indicates there is a fair probability that the vehicle contains contraband or evidence of a crime." 305 Kan. at 990. When analyzing the totality of the circumstances, courts

16

consider "'all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt.'" 305 Kan. at 990; see also *State v. Knight*, 55 Kan. App. 2d 642, 647, 419 P.3d 637 (2018) (probable cause is a "fluid concept"). Officers may search for contraband goods concealed and illegally transported in a vehicle without a warrant if probable cause existed. *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999) (citing *United States v. Ross*, 456 U.S. 798, 806, 102 S. Ct. 2157, 72 L. Ed. 2d 572 [1982]).

Moreover, "'[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search,'" which includes containers within the vehicle regardless of who owns the containers. 526 U.S. at 301 (quoting *Ross*, 456 U.S. at 825). Additionally, the Supreme Court explained that nothing in the rule or precedent limited officers' searches to only contents belonging to the driver. "When there is probable cause to search for contraband in a car, it is reasonable for police officers . . . to examine packages and containers without a showing of individualized probable cause for each one." 526 U.S. at 302. A passenger's personal belongings, like the drivers, are "'in'" the car, and an officer has probable cause to search for contraband in the car. 526 U.S. at 302.

When Officer Cooper stopped Kennedy's vehicle for a traffic infraction, the stop quickly became a DUI investigation because Officer Cooper's observations led her to believe Kennedy was under the influence of methamphetamine. Officer Cooper believed she had probable cause to search the truck and its contents based on Kennedy's failed field sobriety test—which was after she already smelled marijuana, saw marijuana shake, witnessed Kennedy's nervous behavior, and saw a glass pipe in the front seat. Roberts was not arrested at this time, and eventually left the scene. Roberts attempts to distinguish the *Houghton* case, relying instead on cases where officers directed passengers to leave

17

their purses in the car and then searched their purses. See *State v. Boyd*, 275 Kan. 271, 64 P.3d 419 (2003) and *State v. Groshong*, 281 Kan. 1050, 135 P.3d 1186 (2006).

In *Boyd*, the defendant was a passenger in a vehicle stopped for a traffic violation and officers directed her to leave her purse in the car after the driver consented to a search. The police found a crack pipe in the car's console, and an officer then searched Boyd's purse, finding crack cocaine. Boyd's motion to suppress was denied by the district court, and she was ultimately convicted of possession of crack cocaine. The Kansas Supreme Court recognized *Houghton*'s holding, but found the officers in *Boyd* had no probable cause to believe drugs were in the car when Boyd was told to get out of the car and leave her purse. Thus, the officer did not have probable cause to search Boyd or her purse and had no right to order Boyd to leave her purse in the car. 275 Kan. at 283. The *Boyd* court held:

> "that where a passenger is told by a police officer to get out of a lawfully stopped vehicle and in response to the officer's order to leave her purse in the vehicle, puts the purse down and exits the vehicle, a subsequent search of the purse as part of a search of the vehicle violates the passenger's Fourth Amendment right against unreasonable search and seizure. The motion to suppress should have been granted." 275 Kan. at 283.

In reaching this holding, the *Boyd* court relied heavily on Justice Breyer's concurrence in *Houghton*. See 275 Kan. at 276-77. Justice Breyer believed it was important that Houghton's purse was found at a considerable distance from Houghton, who did not claim ownership until after the police officer found her identification when looking through it. *Houghton*, 526 U.S. at 308 (Breyer, J., concurring). Justice Breyer wrote "Purses are special containers. They are repositories of especially personal items that people generally like to keep with them at all times." 526 U.S. at 308 (Breyer, J., concurring). Justice Breyer believed that if a woman's purse was attached to her person, it would amount to a kind of "outer clothing" and receive increased protection. 526 U.S. at 308 (Breyer, J., concurring).

18

*Boyd* and Justice Breyer's concurrence in *Houghton* are distinguishable here. Namely, Roberts' property was in a suitcase in the bed of the truck—not in a purse-type container on his person or within his reach. A suitcase in a truck bed lacks the intimate, personal nature of a container or bag regularly carried with a person that is an extension of themselves. Additionally, Roberts did not attempt to take the suitcase with him upon exiting the vehicle and was thus not prevented from so doing. Moreover, if Roberts alleges only some of the property inside of the suitcase belongs to him—it is incongruous to also argue the entire suitcase is akin to a purse. The suitcase that contained Roberts' property was in the truck bed, outside of his reach, and not attached to him. Thus, *Boyd*'s holding is not applicable here.

In *Groshong* the Kansas Supreme Court held "a law enforcement officer may search a passenger's purse left in the vehicle when the passenger exits, if the passenger makes no effort to retrieve the purse before probable cause to search the vehicle develops." 281 Kan. at 1056-57. In those cases, the purse is treated the same as any other container in the vehicle that could conceal the object of the search. 281 Kan. at 1057. Again, *Groshong* is distinguishable because it involved a purse, not a suitcase—but even if the rule applied to a purse also applied to a suitcase, the holding does not assist Roberts because he exited the vehicle without attempting to take the suitcase. Only after Officer Cooper suspected Kennedy of driving under the influence and she began her DUI investigation did Roberts request to retrieve his belongings.

Roberts specifically argues Officer Cooper lacked probable cause to search for methamphetamine at the time Roberts asked to retrieve his property and leave, prior to Kennedy's failed sobriety test. While Officer Cooper did testify at the suppression hearing that she did not believe she had probable cause to search for methamphetamine until Kennedy failed his field sobriety tests—probable cause is an objective standard, not reliant on the officer's subjective belief. See *State v. Ingram*, 279 Kan. 745, 752, 113 P.3d 228 (2005). Probable cause existed to search the vehicle for marijuana when Officer

19

Cooper observed marijuana shake on Kennedy, smelled the odor of burnt marijuana coming from the vehicle, and saw a glass smoking pipe with marijuana residue in the cab of the truck. Additionally, when Roberts asked to retrieve his items from the truck, Officer Cooper had probable cause to believe Kennedy was driving under the influence and was just about to begin her field sobriety tests. Officer Cooper believed Kennedy was under the influence of illegal drugs, so it was reasonable for her to secure the truck and its contents until she completed the field sobriety tests.

Under the totality of the circumstances, Officer Cooper had probable cause to search the truck and any container in the truck for drugs prior to Roberts' request to retrieve his property. The district court did not err in denying Roberts' motion to suppress.

CONCLUSION

While the district court did not err in denying Roberts' motion to suppress evidence from the vehicle and suitcase search, it did err in admitting Roberts' prior conviction when Roberts did not put intent at issue in the trial. This court cannot say that this error had no impact on the outcome at trial; accordingly, Roberts' convictions are reversed, and this case is remanded for a new trial on all charges.

Reversed and remanded with directions.